STATE, Respondent, v. ROBERTS, Appellant.

(235 N. W. 506.)

(File No. 7108.   Opinion filed March 10, 1931.)

*G. G. Lasell,* of Sisseton, and *M. C. Lasell,* of Aberdeen, for Appellant.

*M. Q. Sharpe,* Attorney General, and *Herman L. Bode,* Assistant Attorney General, for the State.

POLLEY, P. J.   The defendant in this case was convicted of statutory rape alleged to have been committed upon the person of one Alvina Schriver on the evening of June 23, 1927.   Defendant's motion for a new trial was denied, and he appeals.

The conviction rests wholly upon the uncorroborated testimony of the prosecutrix.   She testified that at the time of the alleged rape she was within a few days of being sixteen years old, and had always lived at the home of her father and mother, and for the two years prior to the alleged offense the defendant had spent the greater part of his time at her home; that at times he would work for her father for wages, at other times he helped with the chores, for which he received only his room and board; at times he worked for others.   During winters he was away at times trapping, but was at Schriver's "off and on" during all the time.   On the 23d day of June, 1927, which was Sunday, the prosecutrix, her father and mother, and the defendant were home all day.   In the evening, between 6 and 7 o'clock, Schriver and his wife went in their car to a neighboring farm, and were gone from home about an hour. They left the defendant and prosecutrix doing the chores.   When they had finished milking the cows, feeding the calves, etc., prosecutrix took a pan and went to gather the eggs.   She gathered some eggs about the barn, and then went into the hayloft of the barn to look for eggs up there.   While she was so engaged, defendant came up into the hayloft and, to quote her own words:

"I was looking for eggs when he came up.   Roberts didn't say anything when he came up.   The first thing he did was to grab hold of me and throw me down into the hay.   He grabbed hold of me from in front and didn't say anything at all, just grabbed me and threw me down.   I didn't jump up again.   That is the time he

got on top of me. When he threw me down I screamed. I didn't ask him what he was going to do to me or anything. After he got on top of me he held me down. He didn't say anything. I had on a dress, a slip and underwear, some shoes and stockings. He pulled up my dress and I fought. I fought all the time. I scratched his face and he grabbed my hands so I couldn't fight him any more. Then he had sexual intercourse with me, and then when he had sexual intercourse with me he said: 'You little bitch, if you tell your pa I will shoot you, you little bitch, I will only get a year in jail anyway.' "

After the completion of the above transaction, the witness testified: "Roberts and I both got up and he went down the ladder first and I went down after him. I carried the eggs down."

She then went to the house, and in a little while the defendant came to the house and sat down on the porch, and presently the witness went out and sat down on the porch, and both of them were sitting on the porch when the witness' parents returned. There was no indication at that time that anything out of the ordinary had occurred, and the witness made no mention of what she claimed had happened in the barn until the 28th day of July, when her father asked her if she had had sexual intercourse with the defendant. She told him that she had, and then narrated the incident that she claimed had occurred in the hayloft on the evening of June 23d, and gave as her reason for not having mentioned the matter sooner the threat made by the defendant to shoot her if she reported the incident. On the 29th day of July, witness' father took her to the state's attorney of the county, and made a complaint against defendant, and, acting on the direction of the state's attorney, witness went to a physician who made an examination of her sexual organs. This physician testified that her sexual organs were in normal condition, but that her hymen was ruptured. This he said could have been by sexual intercourse or by an examination by the speculum, but he did not pretend to know when, how, or by whom it had been done. This, of course, does not prove, nor tend to prove, that defendant had ever had sexual intercourse with the witness, and the incident is mentioned only because it is the only scintilla of evidence in the record that is claimed to in any manner corroborate the amazing tale told by the prosecutrix. She said the defendant had always been nice to her except this one occasion;

that: "He has never said anything to me about having sexual intercourse with me until that one time, and he didn't say anything about it that time."

On cross-examination the prosecutrix was asked the following questions:

"How big a house has your father got out there, Alvina?"

"You didn't lie still at all?"

"You had worked with him [defendant] there alone and went to places with him, didn't you?"

"And you didn't help him hoe potatoes?"

"Mr. Roberts has never made any attempt at killing you, has he?"

And on cross-examination the father of the prosecutrix was asked:

"When you were working on the road, Mr. Roberts hoed the potatoes?"

"Was that the time the sheriff came out and got the beer?"

On cross-examination the mother of prosecutrix was asked:

"Did you ever hear Mr. Roberts say anything to your daughter while he was there that was out of the way and uncivil?"

"You never saw anything wrong around there did you?"

These questions were all objected to on the ground that the facts sought to be shown were incompetent, irrelevant, immaterial, not within the issues of the case, and not proper cross-examination. The objections were all sustained.

■ ■ The purpose of this cross-examination was to show that, for more than two years prior to the commission of the alleged offense, the defendant and the prosecutrix had been in each other's company a considerable portion of the time, that they had done the chores together, had worked in the fields together, had been to places away from home together when the opportunity to have sexual intercourse had been present, but that no suggestion with that end in view had ever been made by defendant. She said he had always been nice to her except that one time in the barn. The theory of the court in sustaining these objections was that none of these facts constituted a defense to the crime charged. This, of course, is true, and it is also true that the extent of the cross-examination in any case is vested largely in the discretion of the trial judge, and, unless it is apparent that this discretion has been

abused, the ruling of the trial court will not be disturbed by this court, but in a case like this the widest latitude on cross-examination should be allowed.

■ While the evidence defendant sought to elicit did not constitute a defense, it did go to the credibility of the witness, and the exclusion of such evidence was prejudicial to the rights of the defendant.

On direct examination the defendant was asked: "While you were at Schriver's, where did you sleep?"

■ That was objected to on the ground that it was "incompetent, irrelevant, immaterial, not within the issues of the case, and does not constitute any defense to this action." The purpose of this was to show that all the time the defendant lived at Schriver's he and prosecutrix slept in the same room. Counsel for the defendant stated:

"This condition existed, and the fact is that he and the girl slept in the same room continuously and thereafter.

"By the Court: I suppose there was one room with some sort of screen or curtain?

"Counsel for defendant: There was no testimony to that effect.

"By the Court: Whether there was or not would not be material in this case. The most you could predicate from that was that he behaved himself for some time. I want the defendant to have the benefit of all competent evidence he has, but that is not competent evidence."

■ In this holding the court was clearly wrong. This was competent evidence—not only competent but vital. While the defendant was permitted later on to testify that he and the prosecutrix had slept in the same room all the time he had been there, both before and after the commission of the alleged offense, this did not cure the damage that had been done by the above remarks of the court.

■ What is said relative to the cross-examination of the prosecutrix is true also of the cross-examination of her father and mother. It is claimed by the defendant that Schriver owed him money on his wages, that he owed him money defendant had loaned him to pay a fine for bootlegging, and that the defendant had tried,

without success, to collect this money, and soon thereafter this prosecution was instituted. Defendant should have been allowed to testify to these facts for the purpose of showing the motive of these witnesses. The cross-examination should not have been restricted, as was done by the court. Had these facts been allowed to go to the jury, they might very reasonably have believed that people who were so utterly void of all sense of propriety as to permit their sixteen year old daughter to sleep in the same room with the hired man, and perhaps, too, dress and undress in each other's presence, were capable of trumping up a false charge against the defendant, and sending him to the penitentiary to avoid paying him what they owed him. The court erred to defendant's prejudice in restricting this cross-examination as it did.

For the reasons already shown, a new trial must be granted, and it is not necessary to consider the other assignments of errors contained in defendant's brief.

The judgment and order appealed from are reversed.

CAMPBELL, BURCH, and WARREN, JJ., concurring.

ROBERTS, J., not sitting.