STATE, Respondent v. SHEARER, Appellant

(201 N.W.2d 180)

(File No. 10914. Opinion filed October 6, 1972)

**Morgan & Fuller,** Mitchell, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Leonard E. Andera,** Spec. Asst. Atty. Gen., Pierre, for respondent.

**E. Steeves Smith,** Deputy State's Atty., Mitchell, for plaintiff and respondent.

WINANS, Judge.

The defendant was convicted of a sale of a narcotic drug, namely, marijuana. The information charged that on the 26th day of March, 1970, in the county of Davison, South Dakota, the defendant "then and there did willfully, wrongfully and unlawfully sell a narcotic drug, or preparation containing a narcotic drug; namely, marijuana; contrary to the form of the Statute * * *." There is no question about a sale having been made. The defendant admits it.

The defendant first interposed a demurrer to the information upon the grounds that it did not describe a public offense, in that "it alleges an offense under the provisions of Chapter 94 of Session Laws of 1968 and which said chapter is entitled An Act Entitled, An Act defining and relating to narcotic drugs and repealing chapter 22.13 of the South Dakota Code and all acts amendatory thereof."

The assignments of error, as well as the demurrer, assert the following points relative to the act being in violation of the Constitution of the state of South Dakota. Briefly stated, these contentions are:

I. (1) That said Ch. 94 is in violation of the provisions of § 21, Art. III of the Constitution's requirement that no law shall embrace more than one subject, which shall be expressed in its title. It is defendant's contention that the title of the legisla-

tive act does not indicate the act "contains any * * * regulation, penal provisions, or any penalties."

(2) That the title is defective and violative of § 21, Art. III of the Constitution in that it purports to deal with narcotic drugs and contains in addition provisions with respect to marijuana, which is not a narcotic drug.

(3) That § 1(10) (d) delegates to the Secretary of the Treasury of the United States or his delegate legislative powers including the power to change the list of certain drugs, thereby changing the statute, all in violation of Art. III, § 1 of the Constitution of South Dakota.

(4) That § 17 of Ch. 94 delegates legislative powers to the Division of Criminal Investigation without furnishing guidelines for the exercise of the power, thereby violating Art. III, § 1 of the Constitution.

In addition to the above assignments of error the defendant makes the following assignments predicated upon the trial itself:

II. That the court erred in overruling the defendant's motion for a mistrial when the state introduced evidence before a jury of another alleged buy of marijuana from a person other than the defendant.

III. That the court erred in denying defendant's motion for a mistrial on grounds that adverse publicity was given to the defendant by radio station KORN in a noon-hour broadcast during the course of the trial and immediately following testimony referred to in Assignment 2 above, wherein the news report stated the defendant was charged with one felony count of distributing marijuana and two misdemeanor counts of possession of marijuana, the possession charges being extremely prejudicial because of the state's testimony above referred to.

IV. That the court erred in overruling defendant's motion for a directed verdict based upon defendant's contention that he was the victim of entrapment by the officials of the state and their undercover agent.

Defendant's first contentions are that the title to the act does not indicate that the act "contains any * * * regulation, penal provisions, or any penalties" and also that the title is defective because the act contains provisions with respect to marijuana which it is claimed is not a narcotic drug. This Court held in State v. Williams, 84 S.D. 547, 173 N.W.2d 889, "It will be presumed that the legislature inquired whether there was a reasonable or sound basis for the classification and acted advisedly. State v. Nuss, 79 S.D. 522, 114 N.W.2d 633." Later in Application of Williams, 86 S.D. 208, 193 N.W.2d 793, in speaking of State v. Williams, supra, we held, "What counsel did at the trial (Williams trial) was to move to dismiss both counts of the information upon the grounds that 'marijuana is not a narcotic drug; that possession of and the selling of marijuana * * * would not constitute a violation of Chapter 94 of the Session Laws of 1968 as alleged in the information.' Such contentions were decided adversely to the defendant in State v. Williams, supra."

Chapter 94, Laws of 1968, defines narcotic drug as follows:

"(10) 'Narcotic drug' means any of the following except decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

* * * * * * *

(c) 'Marihuana' which includes all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its

> seeds or resin; but shall not include the mature
> stalks of such plant, fiber produced from such stalks,
> oil, or cake made from the seeds of such plant, any
> other compound, manufacture, salt, derivative, mix-
> ture or preparation of such mature stalks, except the
> resin extracted therefrom, fiber, oil or cake, or the
> sterilized seed of such plant which is incapable of
> germination; * * *".

The Supreme Court of New Mexico in State v. Romero, 74 N.M. 642, 397 P.2d 26, held that marijuana under their definition was a narcotic drug. Their statute defined narcotic drugs as follows: " '(15) "Narcotic drugs" means coca leaves, opium, and cannabis, **and every substance neither chemically nor physically distinguishable from them.'** " The information in that case charged the defendant with having in his possession certain narcotic drugs, to-wit: "cannabis indica, also known as marijuana."

In State of Delaware v. Miller, 11 Terry 286, 50 Del.Super. 286, 129 A.2d 548, the defendant was charged with the crime of having in his possession marijuana cigarettes. The defendant contended that the statute failed to define marijuana and that "since it is a plant in part harmless and in part narcotic, the Information which describes the cigarettes merely as marijuana cigarettes fails to specify possession of a narcotic with certainty." The court held:

> "Defendant's argument is not wholly without merit
> for, as he contends, if marijuana is a term sometimes
> applied to the hemp plant and sometimes only to de-
> scribe the flowering tops which have a definite narcotic
> quality, then an Information charging defendant with the
> possession of marijuana fails to specify the possession of
> a narcotic with that particularity demanded by Article 1,
> Section 7 of the Constitution.

> "On the other hand, this argument fails to take into
> account the fact that to the lay mind, at least, the term
> marijuana means a narcotic. Of even greater importance

here, defendant is charged with the possession of marijuana cigarettes. The smoking of marijuana cigarettes is synonymous with the use of a narcotic. Thus, from a common sense view, an Information charging a defendant with possession of marijuana cigarettes is tantamount to a charge of possessing narcotics. Such is the result reached by the Supreme Court of Utah in an exactly similar case, State v. Navaro, 83 Utah 6, 26 P.2d 955. I agree with the reasoning of the Court in that case. Accordingly, defendant's motion to quash is denied."

The Supreme Court of Florida in Escobio v. State, Fla., 64 So.2d 766, held, "With certain exceptions not necessary to be noted here, the plant cannabis sativa, smoked in marijuana cigarettes, comes within the terms of the Narcotic Drug Law."

The Court of Criminal Appeals of Texas, Gonzales v. State of Texas, 163 Tex.Cr.R. 432, 293 S.W.2d 786, holds that the sale of marijuana is a sale of a narcotic drug and prohibited by law wherein the sale of narcotic drugs is prohibited.

We are aware that courts in some cases have reached a contrary conclusion[1] and that our own legislature has amended the 1968 Uniform Narcotic Drug Law by reducing the first marijuana possession offense from a felony to a misdemeanor. We think it pertinent to point out, however, that the amendment does not change the felony penalties for the offense of a sale of a marijuana or narcotic drug and our case is a sale.

Regarding the defendant's contention that the title does not indicate any regulation or penal provisions or any penalties, we think this is fully covered by Garrey v. Schnider, 78 S.D. 596, 105 N.W.2d 860. In that case this court held, " 'An Act Entitled, An Act relating to regulation as to use of motor vehicles upon the highways of this state and exempting from liability the party administering such chemical tests' " was broad enough to alert

---

1. People v. Sinclair, 387 Mich. 91, 194 N.W.2d 878; People v. Lorentzen, 387 Mich. 167, 194 N.W.2d 827; People v. McCabe, 49 Ill.2d 338, 275 N.E.2d 407. The judges in the above cases have not been unanimous in the reasons given to support their decisions. See also the article, South Dakota's 1968 Uniform Narcotic Drug Law — Marihuana And Constitutional Questions in South Dakota Law Review, Vol. 14, No. 2, p. 303.

the reader that " 'Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood.' as provided in the body of the act."

In State v. Carlisle, 30 S.D. 475, 139 N.W. 127, this Court held:

"[6] There is no merit in the claim that the information fails to state a public offense, because the act upon which the prosecution is based violates section 21, art. 3, of the state Constitution: 'No law shall embrace more than one subject, which shall be expressed in its title.' The specific objection to the act is, as we understand the argument of counsel, that the penalties prescribed therein are not germane to its title. The title of chapter 4, Laws 1909, is as follows: 'An act to provide for state board of dental examiners, to insure the better education of practitioners of dental surgery and to regulate the practice of dentistry in the state of South Dakota.' The general subject, or purpose of the act, as fairly indicated by the language of the title, is the regulation of the practice of dentistry. 'When the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated, are germane to its title.' State v. Morgan, 2 S.D. 32, 48 N.W. 314. Clearly penalties for the violation of any prescribed regulations are germane to such regulations; are, indeed, necessary to accomplish the purpose for which the regulations are prescribed."

It is our opinion that it was the prerogative of the legislature to define marijuana as a narcotic drug and that such definition was germane to the title of the act and that the use of the word "relating" in the title of the act where that act dealt with the subject of drugs is comprehensive enough to alert the reader that such act carried regulations and penalties.

In brief, it is our opinion that the title to the act in question meets its constitutional requirements. See Jacobson v. Nelson, 71 S.D. 350, 24 N.W.2d 332; Garrigan v. Kennedy et al., 19 S.D. 11, 101 N.W. 1081; Morrow v. Wipf, 1908, 22 S.D. 146, 115 N.W. 1121.

 The defendant challenges the constitutionality of the act because, he claims, there is an unlawful delegation of legislative authority to the Secretary of the Treasury of the United States and also to the Division of Criminal Investigation, the latter because of a lack of proper guidelines. It is our opinion the defendant has no standing to make this challenge for the reason that he is charged with an act specifically prohibited by the law and not one promulgated by state or federal agencies. Section 21 of Chapter 94 of the Laws of 1968 provides:

"Constitutionality: If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable."

This court has held that where valid and invalid parts of a statute are so separate and distinct that it is clear the legislature would have enacted the valid portion without the other if it had known of the invalidity, under the doctrine of separability we are bound to save and uphold the valid portion of the act. State v. Lane, 76 S.D. 544, 82 N.W.2d 286; In re Snyder's Estate, 74 S.D. 14, 48 N.W.2d 238; State ex rel. Strauser v. Jameson, 76 S.D. 490, 81 N.W.2d 304; State v. Johnson, 84 S.D. 556, 173 N.W.2d 894.

 The defendant during the trial made a motion for a mistrial based on evidence of "another buy". This motion was denied by the court. In order to understand the situation, it is necessary to set forth what actually occurred at the trial. The State had the purchaser on the stand and was seeking to introduce what had been marked as Exhibit No. 2. In laying the foundation for the introduction of this exhibit the State handed the exhibit to its witness, the purchaser, and asked him to describe the contents of Exhibit 2. The witness replied that it looked very similar to the stuff. Then the State asked the following:

"Q From your viewing of State's Exhibit Number 2 would that appear to be the substance which you gave to Mr. Christenson?

A That appears to be the substance from the 30th.

Q What?

A That appears to be the substance from the buy of the 30th.

Q Not this one here?

A No."

After this occurred, a recess was taken. In the chambers of the court defendant's attorney then made his motion for a mistrial based on the witness' testimony of the buy of the 30th. It appeared at chambers that the buy on the 30th was not from this defendant but from another. A noon recess was then taken following which court convened and the witness was asked:

"Q Mr. Lindley, were you involved in investigations concerning other cases and other defendants aside from Mr. Shearer?

A Yes, sir.

Q And had you had occasion to bring evidence over to Mr. Christenson's house on other occasions involving other defendants?

A Yes, sir.

Q Do you have the exhibit; now, calling your attention once again to Exhibit Number 2 Mr. Lindley, did you buy that, the substance in this bottle from Mr. Shearer on the 26th of March or any other occasion?

A No, sir.

Q Was that involved in another case involving another defendant?

A Yes, sir.

MR. SMITH: Your Honor, I would move that Exhibit 2 be withdrawn from the case and the jury asked to disregard all testimony concerning Exhibit 2.

THE COURT: Do you have any objection?

MR. MORGAN: I don't think it ever has been offered.

THE COURT: It hasn't but there has been testimony regarding it.

MR. MORGAN: I may want to cross examine.

THE COURT: It has never been admitted.

Q On the date of March 26, was there any other substance you did buy on that day?

A Yes, sir.

Q And your testimony concerning that, concerns another substance aside from what was in the bottle?

A Yes, sir.

THE COURT: Aside from Exhibit 2.

Q Aside from what was in the bottle marked Exhibit 2?

A Yes, sir."

Upon cross-examination of the witness, defendant's attorney asked the following question:

"Q When you looked at the bottle, Exhibit 2, and Mr. Smith was questioning you, didn't you say that was the stuff you got?

A I did not say that was the stuff I purchased from Mr. Shearer, no, sir."

The above appears to be the evidence with reference to another buy had in the presence of the jury. It is plain indeed from such evidence that Exhibit 2 had nothing to do with the charge against this defendant based upon a sale made on the 26th of March, 1968, which sale is admitted by the defendant. The jury could not be misled by the evidence to conclude that this defendant had on another occasion sold marijuana to the witness or had sold at any time, the substance contained in Exhibit 2. It is regretable the incident occurred and the state is responsible, but having said that, we are of the opinion that the error was corrected and was harmless, under all the circumstances. We are committed to the harmless error rule. State v. Watts, 85 S.D. 638, 188 N.W.2d 913.

■■■ The defendant moved for a mistrial, based on the broadcast of a news release on radio station KORN in Mitchell made during the 12:45 news period of the first day of the trial and after the reference to "the other buy" which has been set forth at length above. The jurors had been dismissed for the 12:00 noon to 1:30 p. m. recess. Where the information for the broadcast was obtained is not shown, but it referred to the charge of distributing marijuana and two misdemeanor counts of possession. It is the defendant's contention that the broadcast was extremely prejudicial to the defendant, especially in conjunction with the state's testimony. We agree the defendant is entitled to a fair trial. In State v. Williams, supra, the defendant moved for mistrial because of alleged prejudice arising out of the televising during the trial by Sioux Falls stations of a program dealing with marijuana problems. This court held, "No specific prejudice was shown. Defendant asserts only uncertainty concerning the fairness of the trial and this was not sufficient to justify the granting of a mistrial."

The United States Court of Appeals in United States v. Agueci, 2 Cir., 310 F.2d 817, held:

> "The typical jury, in this age of mass-communications, is not hermetically sealed from the events occurring all about them."

It also held, " 'Trial by newspaper may be unfortunate, but it is not new and, unless the court accepts the standard judicial hypothesis that cautioning instructions are effective, criminal trials in the large metropolitan centers may well prove impossible.' United States v. Leviton, 2 Cir., 193 F.2d 848, at 857."

The court in our case instructed the jury in a number of instructions that they were to base their verdict upon the evidence. There is no showing in the record that this was not done by the members of the jury. We fail to find any prejudice.

The last assignment of the defendant is based upon the contention that he was the victim of entrapment. In the Handbook on Criminal Law by LaFave and Scott, Hornbook Series, West Publishing Co., 1972 Ed. at p. 369, it is stated:

> "It is everywhere agreed that the agents of the government, in combatting crime, may properly employ some subterfuge and deception to obtain evidence of crime. A policeman may properly pretend to be drunk, lie in the gutter with his wallet protruding from his hip pocket and await the coming of the thief who is ready and willing to 'roll' a drunk. He may dress up in women's clothes and enter a public park, in the hope of being attacked by, and so of catching, a suspected rapist. He may approach a suspected narcotics seller pretending to be an addict in need of a 'fix.' It is often said that there is no entrapment if the policeman merely furnishes an opportunity for the commission of the crime by one ready and willing to commit it.

"On the other hand, these government agents may not, to obtain convictions, conceive and plan a crime and by trickery, persuasion or fraud induce the commission of the crime by one who would not otherwise have committed it. Practically all jurisdictions agree that if the defendant is thus entrapped into conduct forbidden by the criminal law, by a public law enforcement officer or other person acting in cooperation with such an officer, he may not be convicted. There is, however, sharp disagreement as to (1) the proper formulation of the test for entrapment, (2) the rationale of the defense of entrapment, and (3) the procedure to be used in entrapment cases."

In this case we think the evidence on the question of entrapment is in conflict as to the origin of the intent to commit the offense. And in such case, we believe the rule of law to be that which we stated in State v. Williams, supra:

"(3-5) The question of entrapment where the evidence is in conflict as to the origin of the intent to commit the offense charged is for the jury. The question of entrapment in the instant case was, at most, one of fact. Entrapment as a matter of law is not established where there is substantial evidence from which it may be inferred that the criminal intent to commit the offense charged originated in the mind of the accused. 22 C.J.S. Criminal Law § 45(2)." State v. Williams, 84 S.D. 547, 553, 173 N.W.2d 889, 892.

The court submitted the issue of entrapment to the jury, and left to them the determination of that issue. We have reviewed the instruction on this issue and believe it to have stated the law fully and to have been entirely fair to the defendant.

Judgment affirmed.

All the Judges concur.