STATE, Respondent v. STRONG, Appellant

(245 N.W.2d 277)

(File No. 11585. Opinion filed September 3, 1976)

**William J. Janklow**, Atty. Gen., **Earl R. Mettler**, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

**Dan C. Hanson, Mueller & Bennett**, Belle Fourche, for defendant and appellant.

COLER, Justice.

This appeal was taken from a conviction of the crime of distributing marijuana contrary to the provisions of SDCL 39-17-88. We affirm.

Appellant was charged with having sold, on or about May 10, 1973, approximately five pounds of marijuana to an undercover agent, one Naomi Church, also known as Cathy Clark. Appellant claims (1) that the statute under which he was charged was unconstitutional by reason of (a) a defective title to the act, (b) the unreasonable statutory classification of marijuana as a Schedule I drug, SDCL 39-17-57(7), and (c) the unlawful delegation of legislative authority to the then existing office of commissioner of drug and substances control and, further, (2) that the trial court erred; (a) in allowing the undercover agent to testify; (b) in in-

structing the jury in the manner it did on the issue of entrapment; (c) by limiting cross-examination of the undercover agent; and (d) in giving a special instruction in response to a question from the jury after it had retired for deliberation.

The issue of the defect in the title to Chapter 229 of the Session Laws of 1970, the principal source of SDCL 39-17, and the subsequent codification of the law by Chapter 14 of the Session Laws of 1972 (see SDCL 2-16-13 et seq.), and, further, the construction and effect of SDCL 2-16-15, is controlled by the decision of this court in State v. Barr, 1975, 89 S.D. 280, 232 N.W.2d 257 and State v. Murphy, 1975, 89 S.D. 486, 234 N.W.2d 54, and deserves no further comment. The title to the act is no longer subject to challenge.

■ Appellant, as his second challenge to the constitutionality of the Drug and Substances Control Act, sets forth the claim that the classification of marijuana as a class I drug or substance, SDCL 39-17-55 to 39-17-57, inclusive, is unreasonable, arbitrary and capricious, and thus violated his rights under the equal protection clauses of the South Dakota and United States Constitutions. South Dakota Constitution, Article VI, Section 18; United States Constitution Amendment 14.

The argument advanced by appellant is the same argument which was presented to and adopted by the Illinois Supreme Court in People v. McCabe, 49 Ill.2d 338, 275 N.E.2d 407. In essence, the contention is that the classification of marijuana with numerous other controlled drugs and substances, many of which are in the category of hard drugs, without providing penalties which are commensurate with their narcotic effect or propensity for addiction is in violation of the equal protection clause. This claimed lack of uniformity lies in the fact that a conviction for a first offense violation of SDCL 39-17-88, covering both Schedule I and Schedule II controlled drugs or substances, carries with it a maximum imprisonment of ten years or a fine of not more than $5,000, or both.

While this court took cognizance of People v. McCabe, supra, in State v. Shearer, 1972, 86 S.D. 711, 201 N.W.2d 180 (see 86 S.D.

p. 717, fn. 1), we are asked to reassess our position in light of the fact that a number of trial and intermediate courts have followed the reasoning of the McCabe decision. The import of these decisions is that, based upon more enlightened medical and scientific knowledge relative to both beneficial and harmful effects of marijuana, such a classification is violative of the equal protection rights. Illustrative of cases in which lower courts have taken testimony, made comparisons between marijuana, barbiturates and amphetamines and also have likened the use of marijuana to the use of cigarettes and alcohol to reflect a statutory inconsistency is set forth in State v. Anonymous, Conn.Super., 32 Conn.Sup. 324, 355 A.2d 729. While we cannot support the conclusion reached by Judge Berdon in State v. Anonymous, supra, the decision does provide a rather complete listing of the decisions and recognized publications lending support to the McCabe holding.

At the outset, it is a well settled rule of this court that "when a party assails the constitutionality of an act, he must show beyond reasonable doubt that it is in violation of the fundamental law of our government. Every presumption is in favor of the validity of a legislative enactment, and it is for the attacking party to show that his rights are invaded by that act, and that it does not come within the legitimate exercise of the lawmaking power under the constitution." State v. Morgan, 1891, 2 S.D. 32, 48 N.W. 314, writ dismissed, 159 U.S. 261, 15 S.Ct. 1041, 40 L.Ed. 145; State v. Reininger, 1931, 59 S.D. 336, 239 N.W. 849. We have also held that "The passage of the law by the Legislature raises a presumption of its constitutionality. [citation omitted] To overcome this presumption there must be facts of which we will take judicial notice which will permit us to say that there is no rational basis for the distinction." Great Northern Ry. v. Whitfield, 1937, 65 S.D. 173, 272 N.W. 787. In this context appellant offered no expert testimony in the trial court, but has asked this court to take judicial notice of several medical and legal journals and congressional reports tending to cast doubt on the reasonableness of the classification of marijuana as a controlled substance for the purpose of imposing criminal sanctions. Admittedly, there is as much disagreement among the experts and the courts now as there was at the time that the law in question was enacted.

The statutory scheme here involved does not involve basic or fundamental rights or interests of appellant and

> "the concept of equal protection as embodied in the Due Process Clause of the Fifth Amendment, see *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), does not require that all persons be dealt with identically, but rather that there be some 'rational basis' for the statutory distinctions made, *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1060, 35 L.Ed.2d 282 (1973), or that they 'have some relevance to the purpose for which the classification is made.'" (citations omitted) Marshall v. United States, 1974, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618.

As stated in McLaughlin v. Florida, 1964, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222, "Normally, the widest discretion is allowed the legislative judgment in determining whether to attack some, rather than all, of the manifestations of the evil aimed at; and normally that judgment is given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious." Considering the lack of unanimity in either legal or scientific opinion as to the effects of marijuana, we agree with the Supreme Court of Missouri wherein it stated " 'The classification, we believe, is reasonable and not arbitrary despite the fact that some of the drugs listed could be classified different.' " State v. Burrow, 1974, Mo., 514 S.W.2d 585.

With specific reference to appellant's contention that marijuana is less harmful than tobacco and alcohol, we find support for our holding from the United States Court of Appeals, Second Circuit, which, considering the same challenge to similar provisions of the federal act, concluded that "If Congress decides to regulate or prohibit some harmful substances, it is not thereby constitutionally compelled to regulate or prohibit all. It may conclude that half a loaf is better than none." United States v. Kiffer, 1973, 2 Cir., 477 F.2d 349, cert. denied, 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65. Therefore, appellant's attack upon the constitutionality of the statute, based upon its classification, must fail.

■ Collaterally, appellant claims that the provisions of SDCL 39-17-96, which provides for a reduced penalty for certain convictions involving one ounce or less of marijuana, supports his contention of a violation of the equal protection clauses. Further, he contends that the provisions of SDCL 39-17-69, which authorizes administrative rescheduling of substances and setting forth certain standards, are an unlawful delegation of power violative of Section 1 of Article III of the Constitution of South Dakota. Appellant was charged with the sale, not the possession, of pounds, and not an ounce or less, or marijuana, and further, marijuana is a legislatively scheduled substance and not a substance added to the schedule by administrative action. Appellant is without standing to challenge the constitutionality of the law not affecting him. State v. Shearer, supra; City of Pierre v. Russell, 1975, 89 S.D. 70, 228 N.W.2d 338; State v. Runge, 1975, 89 S.D. 376, 233 N.W.2d 321.

The state's principal witness against appellant was one Naomi Church, a paid undercover agent as authorized by SDCL 39-17-121, who for the purposes of her activities operated under the name of Cathy Clark. It also appears that Ms. Church was a sworn deputy sheriff of Butte County. After considerable experience in undercover work in other states, Ms. Church came to the state of South Dakota under the auspices of the Division of Criminal Investigation in December of 1972 and continued as an undercover agent until late August of 1973. In that period of time, she had made between 200 and 250 buys of controlled drugs and substances. Ms. Church was either well informed or had the uncanny ability to locate and frequent establishments, particularly liquor establishments, which were patronized by persons connected with traffic in controlled drugs and substances. Ms. Church let it be known that she was in the market for "goodies." She first met appellant in January of 1973 and by early May of 1973 had established a rapport with him to the extent that on or about May 8, 1973, appellant offered to sell to Ms. Church approximately 12 pounds of marijuana for the purpose of raising money to buy a drug, identified only as MDA, which appellant had arranged to get from Seattle. Subsequently, on May 9, 1973, appellant contacted Ms. Church at which time he revealed that he no longer had 12 pounds but that there remained for sale five

pounds of marijuana. Arrangement was made for Ms. Church to buy the remaining marijuana and it was agreed that the price she would pay would be $125 per pound. On the following day, May 10, 1973, Ms. Church went to a bank in Belle Fourche and picked up $1,000 for the purpose of effecting the buy for $625. After paying this sum to appellant, they drove to a residence in Belle Fourche where appellant picked up the marijuana in four green plastic bags and placed them in a paper sack which he brought with him and ultimately left in the car driven by Ms. Church. Later in the day, Ms. Church turned the sack and its contents over to an officer who had been observing appellant's and Ms. Church's activities at a discreet distance.

Counsel for appellant objected to the admission of any testimony of Naomi Church based upon the grounds that "The activities of the undercover agent and Deputy Sheriff, Naomi Church, in soliciting marijuana from the Appellant, violated the Appellant's rights of the 4th, 5th and 6th Amendments to the United States Constitution."

█ The theory that the turning over of contraband to an undercover agent is violative of the Fourth Amendment to the United States Constitution or to South Dakota Constitution, Article VI, Section 11 prohibiting unreasonable searches and seizures has not been definitively treated in prior decisions of this court. The delivery of incriminating physical evidence to an undercover agent does not constitute a search within the meaning of either the Fourth Amendment to the United States Constitution or Article VI, Section 11 of the South Dakota Constitution. In the first instance, the drug involved was voluntarily and for consideration delivered to the undercover agent and the transaction did not take place within the home of appellant, a protected area within the meaning of either Constitutional provision. The facts in this case do not give rise to a claimed violation of a right against unreasonable searches and seizures. In accord, see Lewis v. United States, 1966, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312, rehearing denied, 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811; State v. Hamm, 1975, 89 S.D. 507, 234 N.W.2d 60.

█ Appellant also argues that under the Fifth and Sixth

Amendments he was entitled to have the Miranda[1] warnings read to him by the undercover agent as the investigation had focused upon him. The plain language of the Miranda decision establishes that, in speaking "of an investigation which had focused on an accused," referred to in Escobedo[2] the court meant that

> "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612.

It is uncontradicted in the record that appellant was not, in the course of his dealings with Ms. Church, deprived of his freedom in any significant way and we therefore determine the argument to be unsupported by logic or authority.

■Appellant has urged that the trial court unduly restricted cross-examination of Ms. Church. Following the trial court's sustaining a general question as to Ms. Church's health, appellant made an offer of proof and the following occurred:

> "Q  My question was whether Naomi had an illness last year while you were in Spearfish?
>
> COURT: What is your offer of proof?
>
> Q  My offer of proof, your honor, is that I will establish that Miss Church suffered a miscarriage last year while in Spearfish, and two girls helped her — rescued her — that.
>
> COURT: That is totally inadmissible.

---

1.  Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

2.  Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

Q  It goes to her credibility, your honor.

COURT: It does not. Do you have some law to support your position?

Q  The purposes of cross-examination are impeachment and credibility of the witness.

COURT: The court rules that it is inadmissible.

Q  I make my exception to your ruling.

COURT: Is there anything further?

Q  Well as long as we are at it I also intend to ask her about any possible physical characteristics and the way she displayed them during the terms of her undercover work in Spearfish.

COURT: Well, the court will refuse — that testimony would be refused as well on the part of the court."

The first offer of proof is self-explanatory, but the second offer of proof assumes knowledge on the part of the trial court and counsel not presented in the offer. Doubtless, at least one of the physical characteristics alluded to in the offer of proof is reflected in State v. Barr, supra. The record in that case revealed that Ms. Church had certain tattoos on her breasts which she occasionally displayed.

It is a settled rule of this court that "the extent of the cross-examination in any case is vested largely in the discretion of the trial judge, and, unless it is apparent that this discretion has been abused, the ruling of the trial court will not be disturbed by this court." State v. Roberts, 1931, 58 S.D. 147, 235 N.W. 506. Considerable latitude was given to counsel for appellant both in cross-examination of Ms. Church and in the examination of his witnesses. Appellant had ample opportunity to discredit the testimony of Ms. Church but he was obviously unsuccessful. We find no abuse of discretion on the part of the trial court.

■ Over objection of appellant, the court gave Instruction No. 12 and Instruction No. 13, hereinafter set forth, relating to the defense of entrapment:

## INSTRUCTION NO. 12

"In drug related offenses it is a recognized and permissible means of apprehension to have law enforcement personnel infiltrate the illegal activity and gain confidence of the defendant. Hence, the use of undercover personnel does not, in itself, constitute entrapment."

## INSTRUCTION NO. 13

"The law does not tolerate one person, particularly a law enforcement officer, generating in the mind of another person who is innocent of any criminal purpose, the original intent to commit a crime thus inducing such person to commit a crime which he would not have committed or even contemplated but for such inducement.

"If the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose, but the crime was suggested by another person for the purpose of entrapping and causing the arrest of the defendant, then the defendant is not criminally liable for the acts so committed.

"However, when law enforcement officers are informed that a person intends to commit a crime, the law permits the officers to afford opportunity for the commission of the offense, and to lend the apparent cooperation of themselves or of a third person for the purpose of detecting the offender. When officers do this, if the suspect himself, originally and independently of the officers, intends to commit the acts constituting a crime, and if he does acts necessary to constitute the crime, he is guilty of the crime committed. He has no defense in the fact that an officer or other person engaged in detecting crime was present and provided the opportunity, or aided or encouraged the commission of the offense.

"In considering the defense of entrapment the important question for you to determine is this: Did the defendant conceive the idea of committing the crime himself or was the idea conceived by another and suggested to the defendant for the purpose of inducing him to commit the crime in order to entrap him and cause his arrest?

"Since evidence has been received on this issue, the state must prove beyond a reasonable doubt that the defendant was not induced to commit the unlawful conduct for which he is charged by entrapment as herein defined but that he was merely afforded an opportunity to commit the offense which he was predisposed or ready to commit."

Appellant, on the other hand, offered defendant's proposed instructions 1, 2 and 3, which were refused, as follows:

## INSTRUCTION NO. 1
"The basis of the entrapment defense is that the methods used by the police or their agents are repugnant to fair play and justice. The significant focus must be on the conduct of the government agents and not on the predisposition of the Defendant.

"Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

"When the police or their agent's involvement in criminal activity goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then, regardless of the character or propensities of the particular person induced, entrapment has occurred, for the government

has engaged in the impermissible manufacturing of crime."

## INSTRUCTION NO. 2
"The Defendant has the burden of proving by a preponderance of the evidence that he was entrapped into the commission of the crime. Preponderance of the evidence means such evidence as, when weighed with that opposed to it, has more convincing force and a greater probability of truth."

## INSTRUCTION NO. 3
"A person is not guilty of a crime when he commits an act or engages in conduct, otherwise criminal, when the idea to commit the crime did not originate in the mind of the Defendant but originated in the mind of another and was suggested to the Defendant by a law enforcement officer or by a person acting under the direction, suggestion or control of a law enforcement officer for the purpose of inducing the Defendant to commit the crime in order to entrap him or cause him to be arrested."

The instruction given by the court is essentially the language of South Dakota Pattern Jury Instruction (Criminal) 2-14-4, which was promulgated in part from language found in State v. Williams, 1970, 84 S.D. 547, 173 N.W.2d 889. It is appellant's contention that his proposed instructions evidence what he terms to be the modern view as to an instruction on the defense of entrapment. Appellant claims that the instructions proposed would apply an objective standard relative to the predisposition of a defendant to commit an unlawful act. Instruction No. 1 proposed by appellant appears to borrow from text found in State v. Mullen, 1974, Iowa, 216 N.W.2d 375. Proposed Instructions 2 and 3 were essentially taken from California Jury Instructions Criminal 4.63 and 4.60, respectively, but no attempt was made to propose California Jury Instruction Criminal 4.61 (1974

Revision).[3]

The instructions given by the court did not place an undue burden on appellant. The Iowa Supreme Court in State v. Mullen, supra, criticized instructions there given which made reference to the predisposition of the defendant to commit a crime. No such language appears in South Dakota Pattern Jury Instruction. The difficulty that has been experienced by the Iowa trial courts in their attempt to draft an instruction in keeping with State v. Mullen, supra, is obvious from a reading of State v. Potts, 1976, Iowa, 240 N.W.2d 654. In Potts, the Iowa Supreme Court criticized certain language within the entrapment instruction given (see underlined phrase thereof), but otherwise approved the instruction reading, in part, as follows:

" 'Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

*      *      *      *      *      *

The law permits officers of the government to afford opportunities to citizens to commit a crime. They may employ artifice and stratagems to catch persons engaged in criminal enterprise, *but they cannot implant in the minds of innocent persons the disposition to commit a crime and induce its commission in order that they may prosecute.* The test is the effect of the police or

---

3.   California Jury Instruction Criminal 4.61 (1974 Revision) reads as follows: "Law enforcement officers [or persons acting under their direction, suggestion or control] may provide opportunity for the commission of crime and extend their apparent cooperation for the purpose of detecting the offender. If the suspect, originally and independently of the officers [or other persons], had the intent, whenever the opportunity arose, to commit the acts constituting the crime charged, and if he does acts necessary to constitute the crime, he is guilty of the crime committed. He has no defense in the fact that officers [or other persons] engaged in detecting crime were present and provided the opportunity, or aided or encouraged the commission of the offense."

their agent's inducements upon an average law-abiding person's mind.' "

While it may well be that a better instruction on entrapment could be designed, we cannot fault the instruction given as against the instructions proposed. Appellant was not entrapped as a matter of law and as this court stated in State v. Nelsen, 1975, 89 S.D. 1, 228 N.W.2d 143, "where the evidence is in conflict as to the origin of the intent to commit the offense the question of entrapment should go to the jury.

■ During deliberations the jury returned to the courtroom and in a note asked the following question of the court "Is there any chance of getting a record on the $1000 from the bank?" SDCL 15-6-51(a), RCP Rule 51(a), in part, provides:

"After the jury have retired for deliberation if there be a disagreement between them as to any part of the testimony or if they desire to be informed of any point of law arising in the case, they may require the officer to conduct them into court. Upon their being brought into court the information required, if given, must be given in the presence of, or after notice to the parties or counsel, and the instruction given shall be taken down by the court reporter."

In a consultation with counsel for both the state and the appellant, the court suggested that the jury be instructed that the $1000 from the bank was of no concern to the jury. At the request of appellant, certain language was accepted and the special instruction given to the jury read:

"The $1,000.00 from the bank is no concern of the jury. Your only concern is the purchase price of $625.00."

According to the record, after consultation with appellant, counsel for appellant advised the court that he was "satisfied" with that instruction. Appellant, by consenting thereto, waived any claim he might have by reason of his failure to object and the

instruction given became the law of the case. RCP Rule 51(b) and cases annotated thereunder. Further, it is obvious from the instruction given that the trial court saw no materiality to the evidence which the jury solicited and we agree. We find no abuse of discretion. Myron v. Coil, 1966, 82 S.D. 180, 143 N.W.2d 738.

Affirmed.

DUNN, C. J., and WINANS and WOLLMAN, JJ., concur.

ZASTROW, J., not having been a member of the court at the time this case was orally argued, did not participate.