STATE of South Dakota, Plaintiff and Respondent,

v.

Glendon Casey JOHNSON, Defendant and Appellant.

No. 12230.

Supreme Court of South Dakota.

Argued April 18, 1978.

Decided Aug. 3, 1978.

Rehearing Denied Sept. 8, 1978.

William A. Delaney, III, Butte County State's Atty., Belle Fourche, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

Ralph C. Hoggatt, Deadwood, for defendant and appellant.

MORGAN, Justice.

This is an appeal from a conviction of distributing a controlled drug or substance,

hash oil, in violation of SDCL 39–17–18. Appellant contends primarily that the trial court should have found entrapment as a matter of law, and dismissed the action. Appellant also asserts numerous other errors such as an insufficient information, an untimely amendment to the information, and not allowing an instruction to go to the jury which would have the jury associate the informant in this case as part of the government. We reverse the judgment of conviction.

About two days before September 17, 1976, a purported friend (informant), an undercover agent for Butte County, South Dakota, whose true identity and occupation were unknown to appellant, stopped at the home of the appellant and his wife, inquiring as to whether the Johnsons would like to smoke some "hash oil." Appellant and his wife testified that this was not unusual since the informant was always leaving different pills and other things that they had to destroy when he left. This testimony was undisputed. There was also undisputed testimony that the informant and the Johnsons socialized frequently, and that informant had given them money gifts and also loaned them money at different times.

On September 17, E. F. Dump, a narcotics officer for the Rapid City Police Department, Diane Wray, also a Rapid City Police Officer, and Richard Mullen, the Butte County narcotics agent, went to Belle Fourche, South Dakota, to meet with the informant. After conferring, Officer Dump and the informant went to appellant's home for the purpose of purchasing some drugs.

Upon arrival, the informant went to the front door and appellant let him in. Immediately upon entering, informant wanted to know if appellant still had the hash oil balls that informant had left two days before, since informant had a friend in the car who wanted to get high. Appellant stated yes, but at the time refused to give them to informant. Informant stated that since he knew the appellant was broke, informant's friend would give them some money for the hash oil. Informant went outside to talk to

Officer Dump, at which time he informed Officer Dump that appellant had approximately seven hits of hash oil and would be willing to sell. After a short discussion, informant went back into the house where he told the appellant that his friend would pay one dollar for each hash oil ball.

At this point, the three people went outside. Officer Dump introduced himself and asked if appellant would sell. Appellant then agreed to sell at "a dollar a hit" and handed the foil balls to informant who continued to hold them in his open hand. On request, the appellant gave informant a plastic bag in which to carry the foil balls, whereupon they left, went to a secluded area outside town and turned over the plastic bag with the foil balls inside to Agent Mullen.

The informant was not called by the state to refute any of the defense testimony, although his name had been endorsed on the information and he was available.

The state's evidence, on rebuttal, consisted of the testimony of Officer Dump who stated that appellant had told him that a small deal had fallen through concerning the hash oil and appellant was selling hash oil that he had left that he had not smoked. Officer Dump testified further that appellant demonstrated how to smoke hash oil. A sixteen-year-old juvenile was called and testified that he had previously bought a "couple of joints" from appellant. He further testified that appellant had approached him to make up a story for the trial and that he had consented to lie, but had changed his mind later.

Appellant alleges that the trial court erred in not finding entrapment as a matter of law and not granting defendant's motion for a dismissal. We agree.

In the entrapment area, two theories have evolved from the landmark case of *Sorrells v. United States*, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. Briefly, these two theories are the subjective and objective tests. The subjective test usually goes to where the intent of the crime originated, i. e., either in the defendant or in the state, and thus is usually a question for the jury.

*State v. Nelsen*, 1975, S.D., 228 N.W.2d 143. The objective test concerns an inquiry only into police conduct to determine if the actions of the police were so reprehensible under the circumstances, that the court should refuse, as a matter of public policy, to permit a conviction to stand. *People v. Stanley*, 1976, 68 Mich.App. 559, 243 N.W.2d 684.

This court has adopted the subjective test in *State v. Williams*, 1970, 84 S.D. 547, 173 N.W.2d 889 and reaffirmed this choice as recently as 1976 in the case of *State v. Nelsen*, supra.

However, the appellant contends that with this unique type of fact situation, this court should adopt the objective test. The unique fact situation which is presented in this case and with which this court has never been faced is called "take-back" entrapment. These are cases where the government, through an agent or informer, supplied drugs to the defendant, and the government, through an agent or informer, later reappropriates any of those drugs from accused.

The theory behind the objective test is well stated in *People v. Stanley*, supra. The *Stanley* court cites from *People v. Strong*, 1961, 21 Ill.2d 320, 325, 172 N.E.2d 765, 768, the following:

> We know of no conviction for sale of narcotics that has been sustained when the narcotics sold were supplied by an agent of the government. This is more than mere inducement. In reality the government is supplying the *sine qua non* of the offense.

The *Stanley* court further described it as "manufactured crime."

From the record it appears that this is a classic example of "take-back" entrapment. Appellant testified that the government informant brought the hash oil over to his house two days before the offense. The same hash oil that was furnished by the informant was sold back to the government two days later at the request of the informant. The undisputed testimony was that

informant specifically referred to the same hash oil balls.[1]

The fact that the informant, and not a police officer, supplied the controlled substance makes no difference. The government, after utilizing an informant, cannot disown his actions. *Sherman v. United States*, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848. Even if police officers working with an informant claim ignorance of the fact that the informant was the supplier of contraband, entrapment is still available as a defense. *People v. Stanley*, supra.

This court, going back to *State v. Williams*, supra, has adopted the subjective test from *Sorrells*, supra, as to the origin of the intent to commit the offense. As was stated in *State v. Williams*, supra, and reiterated in *State v. Shearer*, 1972, 86 S.D. 711, 724, 201 N.W.2d 180, 187:

> '(3–5) The question of entrapment where the evidence is in conflict as to the origin of the intent to commit the offense charged is for the jury. The question of entrapment in the instant case was, at most, one of fact. *Entrapment as a matter of law is not established where there is substantial evidence from which it may be inferred that the criminal intent to commit the offense charged originated in the mind of the accused. . . .*' [citations omitted]. (Emphasis added.)

Examination of all the cases decided by this court however, does not reveal any case of "take-back" entrapment such as we find in the case before us. In the instant case, the record reveals no substantial evidence from which it may be inferred that the criminal intent to commit the offense charged originated in the mind of the accused, but rather, to the contrary, there is substantial evidence that the seed of the offense was planted in the mind of the appellant by the informant and brought to fruition through the acts of the informant. Therefore, we hold that the trial court erred in denying the appellant's motion for a directed verdict at the close of all of the

---

1. Since the state could have called the informant to the stand to rebut appellant's testimony and did not, an inference must be drawn that he did so.

evidence for the reason that the evidence, viewed in the light most favorable to the state, showed as a matter of law that the appellant was entrapped into the commission of the offense charged.

In so holding, we do not reject the subjective test, which looks at the intent, and adopt the objective test, which examines solely the police conduct, for our decision rests not on the reprehensibility of the actions of the police, but upon the determination that the actions of the police, whether reprehensible or not, constituted entrapment as a matter of law lacking substantial evidence from which it may have been inferred to the contrary.

Our decision on the issue of entrapment having disposed of the case, we need not examine the other issues raised by the defendant. We reverse the judgment of conviction and remand to the trial court with instructions to enter a judgment of acquittal.

DUNN, C. J., and ZASTROW, J., concur.

WOLLMAN and PORTER, JJ., dissent.

WOLLMAN, Justice (dissenting).

I agree with the majority opinion that we should not reject the subjective test of entrapment, but I would hold that there was sufficient evidence from which the jury could reasonably have concluded that the criminal intent to commit the offense charged originated in the mind of the appellant. It is true that the offense was brought to fruition through the acts of the informant, but that aspect of the entrapment defense was adequately covered by the trial court's instruction. In addition to the evidence summarized in the majority opinion concerning appellant's predisposition to commit the crime, the record reveals that after telling the informant that he preferred to keep the hash oil balls, appellant asked the informant how much they would be worth. Moreover, appellant admitted that he had smoked marijuana in the past and that he had grown some marijuana plants at his residence. Appellant accepted payment for the substance and seemed to

be familiar with the type of activity involved in the distribution of controlled substances. See *State v. Parker*, S.D., 263 N.W.2d 679. Accordingly, in keeping with the principles set forth in our decisions and in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366; and *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113, I would hold that the trial court did not err in submitting the case to the jury.

I am authorized to state that Justice PORTER joins in this dissent.