STATE, Respondent, v. ALBERS, Appellant.

(219 N. W. 263.)

(File No. 6540. Opinion filed May 4, 1928.)

*Mundt & Mundt,* of Sioux Falls, for Appellant.

*Buell F. Jones,* Attorney General, and *Bernard A. Brown,* Assistant Attorney General, for the State.

MORIARTY, C. The appellant was convicted of statutory rape, and he appeals from the judgment and from the order denying his motion for a new trial.

The appellant's brief sets forth very numerous assignments of error, but all these may be considered as constituting seven groups, as follows:

First. Alleged error of the trial court in permitting the state's attorney to indorse names of additional witnesses on the information.

Second. Failure of the court to admonish the jury not to consider certain statements made in the presence of the jury.

Third. Alleged errors in the admission and rejection of evidence.

Fourth. Refusal of the trial court to give certain instructions.

Fifth. Alleged misconduct of the jury.

Sixth. Alleged misconduct of the state's attorney.

Seventh. Insufficiency of the evidence to sustain the verdict.

As to the indorsement of witnesses' names, the record shows that before the jury was selected the state's attorney asked permission to indorse upon the information the names of three additional witnesses, stating that these witnesses were unknown to him at the time of filing information. When the request was made, the defendant's counsel objected on the ground that the defendant was not prepared to meet the issues raised by the testimony of these additional witnesses and could not defend without being granted a continuance, if these witnesses were allowed to testify.

At that time there was nothing before the court to indicate what the testimony of these additional witnesses would be, nor was any showing as to that made by the defendant. When these witnesses testified, it became apparent that their evidence merely corroborated that of other witnesses whose names were indorsed before the information was filed. When the nature of their evidence was disclosed, the defendant made no showing of surprise, nor did he take any steps toward the securing of a continuance. In the absence of such procedure, it does not appear that the defendant was in any way prejudiced by permitting these witnesses to testify. State v. Cherrington, 34 S. D. 562, 149 N. W. 421; State v. Fulwider, 28 S. D. 622, 134 N. W. 807; State v. Matejousky, 22 S. D. 30, 115 N. W. 96; State v. King, 9 S. D. 628, 70 N. W. 1046.

■ As to the failure to admonish the jury, the record shows that when the state's attorney began his examination of the prosecutrix as a witness for the state, an attorney, not engaged in the trial of this case, rose and stated to the court that he was acting for this witness and her sister in another matter in which they were defendants, and that he desired to ask leave to instruct his clients as to their right to refuse to answer any questions as to matters that might tend to incriminate them. Thereupon the counsel for defendant, Albers, objected to the consideration of the matter in the presence of the jury. The trial court then excused the jury from the court room and in the absence of the jury the attorney making the request advised his clients as to their right to refuse to answer.

It is difficult to perceive what further the trial court could have done in the matter. Neither the trial court nor the state's attorney was responsible for the occurrence. Defendant's counsel and another attorney, interested like defendant's counsel in preventing the eliciting of evidence by the state, were the only ones to bring the matter to such attention as the jury may have given it. The orderly administration of justice cannot permit the staging of such an episode to disqualify the trial jury and all other members of the jury panel who might chance to be present. Nor is it apparent that any statement which the trial court might make to the jury would in any way remove any prejudice that might result from the discussion. The record shows that neither the prosecutrix nor her sister claimed the privilege of refusing to answer, so the jury could not feel that anything had been kept from them because of the matter mentioned in their presence. Therefore no prejudice is apparent.

■ As to the alleged errors in the rulings on evidence, there are two points worthy of consideration. The state's attorney, in his examination of the prosecutrix, resorted to the use of leading questions. The record shows that this witness was very young, had little educational training, and, from the nature of the matters inquired into, was naturally a reluctant and embarrassed witness. Under such circumstances, it was within the discretion of the trial court to allow leading questions to be used upon the direct examination. State v. Cambron, 20 S. D. 282, 105 N. W. 241; State v. Waters, 132 Iowa, 481, 109 N. W. 1013; Smits v. State, 145 Wis. 601, 130 N. W. 525.

██ Certain witnesses were allowed to testify as to statements in the nature of admissions being made by the defendant. Some of these statements were alleged to have been made at the time defendant was before the magistrate for preliminary examination. The defendant was then under arrest, but there is no evidence that any statements made by him were elicited by threats or promises, and there is evidence that no threats or promises were made. The evidence of the examining magistrate, the attorney representing the state, and of others present in the magistrate's office shows that the statements were not in response to any questions put to defendant as a witness, for preliminary examination was waived by him. The magistrate, the prosecutor, and others testified that the defendant was advised that he did not need to make any statements, and that any statements which he did make might be used against him. The evidence was sufficient to justify the trial court in admitting evidence of these admissions, as admissions voluntarily made.

As to the refusal of the trial court to give certain proposed instructions, of the eleven proposed one is an instruction that the jury must return a verdict of not guilty, because there was no evidence that the defendant was guilty of the crime charged. This is the same question now raised under the assignment of the insufficiency of the evidence.

██ Three of the proposed instructions are based upon the theory that failure of the prosecutrix to make complaint may be considered by the jury, and that the minor offenses of attempt to commit rape, assault, and assault and battery are offenses included in the offense charged. These contentions are unsound, as applied to cases where a girl under the age of consent is a willing participant in the act. This is so well established that we do not consider it necessary to cite authorities. The others of the proposed instructions are upon the weight to be given to evidence of defendant's good reputation and as to the question of the voluntary character of the admissions and the weight to be given to them. The trial court included much of these requests in its instructions given to the jury, and the law as to those questions was quite fully and correctly stated in the court's instructions.

Misconduct of the jury is alleged because, after the case had been submitted to them, the jurymen were taken to supper by the

bailiff, and upon returning from supper they went into the sheriff's office, where one Thackeray, a deputy sheriff, was present; that Thackeray had acted as a witness for the state in the trial of Albers; that the jurymen remained in said office about half an hour; and that within 10 or 15 minutes after leaving said office and going to the jury room the jury returned the verdict.

It is not shown that the jury separated or was ever out of the observation of the sworn bailiff in charge. There is no showing that there was any discussion of the case while the jury was in the sheriff's office, or that Thackeray talked with any members of the jury. The affidavit presented in support of this contention does not negative the possibility that Thackeray left the sheriff's office immediately after the jurymen entered it, and that no conversation took place between him and any member of the jury. There is nothing in the showing to question the integrity of the verdict.

Decisions dealing with cases where the jury or some of its members accept favors from a party or an attorney interested in the case do not apply, nor do those where it is shown that members of the jury have discussed the case with nonmembers or have allowed it to be discussed in their presence.

■ The alleged misconduct of the state's attorney consists in certain statements made by him during his closing argument. It appears that during this argument the state's attorney said that he "would clean house" at the home of the prosecutrix, "if it is humanly possible." This statement was invited by defendant's counsel, who had called the attention of the jury to the fact that a sister of the prosecutrix had given birth to a bastard child and that no arrest had been made in that matter.

One who invites statements which would otherwise constitute misconduct cannot take advantage of such invited error. 16 C. J. 911; People v. Sliscovich, 193 Cal. 553, 226 P. 615; State v. Parks, 25 N. M. 395, 183 P. 433; State v. Browman, 191 Iowa, 608, 182 N. W. 823; State v. Kendall, 200 Iowa, 483, 203 N. W. 806; People v. Powers, 203 Mich. 40, 168 N. W. 938.

■ The state's attorney also stated during his argument that, even if the prosecutrix had been advised by her attorney as to her constitutional rights, "she stated the facts."

While this statement concerned matters outside the record, we

cannot see that it could prejudice the defendant. The jury had heard the statement of the attorney who said he desired to advise the prosecutrix as to her privilege to refuse to answer any questions that would tend to incriminate her. The jury had been excused from the courtroom to permit the discussion of that matter, and it seems that calling attention of the jury to the fact that the prosecutrix had not claimed her privilege, but had testified fully as to her version of the matters at issue, might well be advanced as an argument in favor of the defendant. It does not appear that this statement could prejudice the defendant. Furthermore, it appears that in each instance of alleged misconduct the trial court admonished the jury that the matters referred to should not be considered in determining the guilt or innocence of the defendant.

 The conduct of the trial and the line of argument counsel are permitted to pursue rest largely in the discretion of the trial court, and this court will not reverse the action of the trial court in denying a new trial on such ground, except where there has been an evident abuse of such discretion. Lindsay v. Pettigrew, 3 S. D. 199, 52 N. W. 873; State v. Bechtold, 48 S. D. 219, 203 N. W. 511.

As to the sufficiency of the evidence, it is true that the testimony of the prosecutrix was often wavering and uncertain. She frequently answered, "I don't know." But it will be observed that where this answer related to the doing of the acts complained of, the question asked whether the act was done at a certain time. As to the fact of intercourse with the defendant, there was no such uncertainty. The intimate relation of prosecutrix and the defendant, the opportunities for the commission of the acts, the physician's testimony as to the condition of the genital organs of the prosecutrix, the sounds heard by the sister while defendant and prosecutrix were alone in the kitchen at the time when prosecutrix testified the act was done, and the incriminating admissions of defendant, as testified to by several witnesses, constitute ample evidence to support the verdict when taken in connection with the direct evidence of the prosecutrix.

We find no reversible error in the record, and the judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, and BROWN, JJ., concur.

BURCH, P. J., absent, and not participating.

CAMPBELL, J., concurs in result.