## STATE v. FRED W. RAASCH.[1]

November 5, 1937.

No. 31,217.

*Jerome Hoffmann,* for appellant.

[1]Reported in 275 N. W. 620.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *M. F. Kinkead,* County Attorney, and *James F. Lynch,* Assistant County Attorney, for the State.

LORING, JUSTICE.

The defendant was convicted of the crime of malfeasance as an officer of the police force of the city of St. Paul in collaborating with gamblers in evading the law. Upon this appeal he contends that the conversations recorded on certain pamograph records were not fully identified; that the use of certain typewritten transcripts of such conversations, though not admitted in evidence, was prejudicial to him. He also complains that his cross-examination of one of the witnesses against him was prejudicially limited and that he was improperly restricted from showing that he was acting under instructions from a superior.

The Royal Cigar Store at 443 St. Peter street, St. Paul, was engaged in conducting gambling upon horse races and had a news service which supplied information in regard to the principal races run in this country. The Riverview Commercial Club was engaged in operating slot machines in St. Paul, and the defendant was charged with furthering these two enterprises by encouraging their operation and furnishing information in regard to police activities which affected them. James Crumley was inspector of detectives and had an office on the third floor at police headquarters. The defendant was his assistant and had an adjoining room, and it was to these two rooms that the telephone line known as Cedar 5328 was operated. This line did not pass through the police switchboard and was tapped by pamograph operators in a room where the wires could be reached without defendant's knowledge. The pamograph was so arranged that a signal was given the operator whenever a telephone call was put through either to or from the defendant or his superior. The operator of the pamograph could then immediately commence the recording of the conversation which took place over the telephone wires and to which the operator listened while the conversation was being recorded. He could also listen without

recording the conversation if it appeared to be wholly immaterial to the purpose for which the wire was tapped.

■ Upon examination of the record we find that the witnesses who testified to the transcribing of the telephone conversations upon the pamograph records sufficiently identified the defendant's voice. True, they did not know his voice at the time they started making the records, but not only did the defendant respond to his name when his office was called on the telephone, but after the making of the records these witnesses saw the defendant and heard him talk repeatedly, so at the time they testified they were able to testify positively that the voice they had heard over the telephone at the time the pamograph records were taken was the defendant's voice. They also recognized and identified the voices of other participants in the conversations who were identified with the gamblers. They said that the conversations they heard were truly recorded by the pamograph and truly reproduced by that instrument in court. In our opinion, this was a sufficient identification of the defendant as a participant in the conversations and laid a sufficient foundation for the introduction of the pamograph records. Davis v. State, 200 Ind. 88, 107, 161 N. E. 375, 382.

■ For the convenience of court and counsel, the recorded conversations were transcribed in typewritten form and were used to follow the conversations as they were reproduced by the pamograph in court. The pamograph was equipped with a sufficient number of headsets so that the jury, court, and counsel could listen to the record while the conversations were being reproduced. At times the court did not use the headset which was provided for it but, in the presence of jury and counsel, followed the typewritten transcript. Objection was made by the defendant to the court not listening through the headset. While it would have been preferable for the court to listen, we do not think there was any prejudice to the defendant in its not doing so. The jury and counsel for both parties heard the conversations as reproduced, the court was at all times present and in control of the trial, and had any objection been made or question raised it could have acted. There were occasions upon the trial when the needle of the reproducing mechanism jumped

from one groove of the record to another, thus omitting a part of the conversation, but in such cases the record was played over and the whole conversation reproduced. The typewritten transcripts were not introduced but used as memoranda to refresh the memory of the witnesses who had heard the conversations that were recorded. In each instance they were checked back against the pamograph records. We think their use was not prejudicial.

■ The fact that there was no record made of those parts of the telephone conversations which related to subjects other than those of which the defendant stands here accused did not render the relevant part of the conversations inadmissible. The operators of these machines were informed as to the nature of the conversation which they were asked to record, and so when the conversation began to relate to other subjects they did not record it. If there was further conversation which the defendant thought bore upon the matter, he was of course perfectly at liberty to show it by the other party to the conversation if he did not care to go upon the stand.

■ It is further contended that the defendant should have been allowed to show that doing what he did to assist these gamblers was at the instruction of superior officers. The defendant is not only presumed to have known the law, but, as an experienced police officer and detective, he must have actually known that he was engaged in a most reprehensible violation of the law in his collaboration with and assistance to the gambling establishments. On the merits of the accusation against him, it was not admissible in mitigation of his guilt.

■ The defendant claims prejudice in that he was unduly restricted in his cross-examination of the witness Jamie, who had charge of the wire-tapping operations. We think that the subjects which defendant sought to go into were quite fully covered in the evidence that was admitted and that further cross-examination was wholly in the discretion of the trial court. The record justified the jury in finding that the defendant gave these gamblers information and advice which was valuable to them in their illegal operations and hence was guilty of malfeasance in office.

The order appealed from is affirmed.

Mr. Justice Peterson, having been attorney general when the appeal in this case was taken, took no part in its consideration or decision.

