STATE of South Dakota, Plaintiff and Respondent,

v.

Robert J. PARKER, Defendant and Appellant.

No. 12103.

Supreme Court of South Dakota.

March 20, 1978.

Rehearing Denied April 26, 1978.

---

6. Subject, of course, to the requirement that the terms and conditions be "just and reasonable."

Harry W. Christianson, Chief Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

John N. Gridley, III of Gridley, Nasser & Arneson, Sioux Falls, for defendant and appellant.

Robert J. Parker, pro se.

FOSHEIM, Circuit Judge.

The defendant appeals from his conviction of two counts of distribution of marijuana. He was also charged with distribution of amphetamines. On motion of the state, the amphetamine count was dismissed.

State undercover agents Linda Mendel, John Kottman, Kay Kottman and Danvers Jansen began an association with defendant which culminated in his arrest. At about 8 p. m. on March 5, 1976, the defendant sold a small quantity of marijuana to the state agents. A much larger quantity of marijuana was transferred in the early morning of March 6, 1976. Defendant claims to have suffered from amnesia during much of the evening of March 4, 1976.

The first assignment of error claims that the trial court erred in denying defendant's motion for a psychiatric examination of state witnesses Linda Mendel and John Kottman to determine probable credibility. Defendant does not challenge the competency of either witness to testify. He contends a psychiatric examination was necessary to determine their capacity to observe, recollect and communicate for impeachment purposes.

Most of the courts which have dealt with this question have recognized the authority of the trial judge to order a psychiatric examination of a witness as to credibility. Whether a requested psychiatric examination should be granted is a matter within the discretion of the trial judge. There must be a substantial showing of need and justification. *State v. Klueber,* 1965, 81 S.D. 223, 132 N.W.2d 847; *State v. Schweitzer,* 1969, 84 S.D. 384, 171 N.W.2d 737.

In *Klueber,* which was a child molestation case, we reviewed the authorities and quoted from an article entitled "Psychiatric Evaluation Of The Mentally Abnormal Witness," 59 Yale Law Journal, 1324 at 1338:

" 'Judicial appreciation of psychiatry has been most pronounced in sex offense cases. Recognizing that false sex charges may stem from the psychic complexes of a female who appears normal to the layman, courts have permitted psychiatrists to expose mental defects, hysteria, and pathological lying in sex prosecutrices. The liberal attitude in this area is probably due to the gravity of the charge; to the general lack of corroborating evidence; and perhaps to a popular feeling that sex is peculiarly within the ken of psychiatrists.' "

Our decision was limited to complaining witnesses in sex offenses, and we cautioned against reading into it what our views might be in the larger field. However, we did recognize the trend of recent cases in the direction of permitting psychiatric testimony of witnesses generally to impeach their credibility as paralleling the general acceptance of the science of psychiatry. Since drug offenses often rest on the testimony of a narcotic agent with a drug habit history, we now extend the *Klueber* deci-

sion to that area when corroboration is lacking and special safeguards are indicated to protect an accused from being the victim of fantasy or psychic complex.

■ Defendant's motion was based substantially on the testimony of Linda Mendel, that in 1973 she was a voluntary patient in the South Dakota Human Services Center for two weeks. Her confinement was for depression following childbirth and surgery. No showing appears as to the witness Kottman. This falls far short of the required substantial showing of need and justification. See Annot., 20 A.L.R.3d 684. There was no abuse of discretion in denying the motion.

The next assignment of error focuses on the state's destruction of four white tablets obtained from defendant. The state chemist found that the tablets were not a controlled substance. The defendant was furnished a copy of his report. Defendant requested production of the tablets to have them analyzed by an independent chemist, whereupon the prosecution disclosed that they were lost or destroyed. The amphetamine charge was dismissed as a result of the chemist's findings.

■ Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland,* 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. The evidence suppressed must be exculpatory. *Lampkins v. State,* 1971, 51 Wis.2d 564, 187 N.W.2d 164. Loss or destruction by the prosecution of material evidence has, likewise, been held to be grounds for dismissal. *United States v. Heath,* 1957, D.C.Hawaii, 147 F.Supp. 877, appeal dismissed, *United States v. Heath,* 1958, 9 Cir., 260 F.2d 623. Generally, the defendant must show that suppressed evidence was exculpatory and material. However, where the evidence is destroyed, thus rendering proof of its exculpatory nature impossible, the inability of the defendant to show that the destroyed evidence was exculpatory does not alone defeat the claim

that its destruction and nondisclosure by the prosecution denied the defendant due process of law given the showing that the evidence was clearly material to the issue of guilt or innocence. *State v. Amundson,* 1975, 69 Wis.2d 554, 230 N.W.2d 775; *United States v. Bryant,* 1971, 142 U.S.App.D.C. 132, 439 F.2d 642. The defendant has not established that the lost or destroyed evidence was material to the issue of guilt or innocence. If it was not material, it could not be exculpatory. The four white tablets could relate only to the amphetamine charge. When that charge was dismissed, we cannot discern any further probative purpose. *State v. Kietzke,* 1971, 85 S.D. 502, 186 N.W.2d 551.

Defendant contends that the trial court erred in denying his motion to dismiss for entrapment as a matter of law.

In *State v. Williams,* 1970, 84 S.D. 547, 173 N.W.2d 889, this court adopted the "origin of intent" test announced in *Sorrells v. United States,* 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed.2d 413, and held that entrapment as a matter of law is not established where there is substantial evidence from which it may be inferred that the criminal intent to commit the offense originated in the mind of the accused.

■ Using subterfuge and deception to obtain evidence of a crime, or otherwise furnishing an opportunity for the commission of the crime by one ready and willing to commit it is not entrapment. If the methods of undercover agents were guided by the rules of sportsmanship, few arrests would be made. What the accused might consider "foul" does not necessarily constitute entrapment.

■ However, the state may not conceive and plan a crime and by trickery, persuasion or fraud induce the commission of the crime by one who would not otherwise have committed it. Drawing the line is often difficult. *State v. Nelsen,* 1975, S.D., 228 N.W.2d 143.

■ In this case, the evidence supports conflicting positions as to the origin of the

intent to commit the offenses. The defendant claims persuasion and overtures of sex by Linda Mendel were used to induce him to sell drugs to the undercover agents. On the other hand, the evidence shows the defendant had in his possession seven and one-half (7½) pounds of marijuana ready for prompt delivery. He accepted payment and seemed to be familiar with the criminal activity. The trial court under proper instruction submitted the origin of intent issue to the jury. In our opinion, this was not error. *State v. Shearer,* 1972, 86 S.D. 711, 201 N.W.2d 180.

Tape recordings of conversations between defendant and the state's agents were admitted into evidence. Agent John Kottman controlled the recording device. The microphone was hidden. There were numerous breaks in the tape. John Kottman said he turned it off when they were "kidding around" or talking about music or the weather. The defendant does not urge constitutional questions but claims that the court improperly admitted the recordings because they were incomplete.

■ It is generally held that evidence in the form of a sound recording is admissible if authenticated by proper foundation. The fact that a recording may not reproduce an entire conversation has usually been held not to require its exclusion; however, the recording may be rejected if the jury must speculate as to what was said. Whether to admit it should be left to the sound discretion of the trial judge. 29 Am.Jur.2d, Evidence, § 436; see also Annot., 58 A.L.R.2d § 7[a], 1024, 1037; Annot., 10 L.Ed.2d, § 9, 1169, 1179–1180.

■ A showing that the person making a recording could control it by pressing a button to turn it off and that he had interrupted the recording for various reasons from time to time was held not to require its exclusion where the evidence established that all pertinent parts of the conversation had been taken down. *State v. Melerine,* 236 La. 881, 109 So.2d 454.

In *State v. Raasch,* 1937, 201 Minn. 158, 275 N.W. 620, the operator of the pamo-graph did not record the conversation with the accused when it appeared to be wholly immaterial to the purpose for which the recording was made. On appeal, the court held that this did not render the relevant part of the conversation inadmissible. If the defendant thought other conversation bore upon the matter, he could have revealed it by examining any party to the conversation, even though he did not wish to testify himself.

The voices were identified by Mr. Kottman. Before admitting them into evidence, the trial court heard the tapes out of the presence of the jury. In our opinion, their admission into evidence was not an abuse of discretion.

The record discloses that in closing argument, defense counsel commented on the failure of the state to call Kay Kottman and Danvers Jansen as witnesses. Defendant claims the following statements of the attorney general in rebuttal argument were prejudicial:

"And all of a sudden it is the State's fault because Kay Kottman didn't get called. Ladies and gentlemen, I submit to you both sides have the same power of subpoena. They could have brought Kay Kottman in here if they wanted her, they could have asked D.J."

■ Comment on the failure of the accused to produce evidence in his defense is different from comment on his failure to testify. The prosecution may comment upon the failure of the accused to produce evidence in his defense when it appears to have been in his power to do so. *State v. Knapp,* 1914, 33 S.D. 177, 144 N.W. 921; *State v. Winckler,* 1977, S.D., 260 N.W.2d 356.

■ If counsel for the accused commits an impropriety in making remarks, the proper way to correct such an abuse is to call it to the attention of the court and have it stopped. 23A C.J.S. Criminal Law § 1108. However, remarks by the prosecuting attorney, even though otherwise improper, are not grounds for reversal where they are provoked by counsel for the defendant. *State v. Brown,* 1965, 81 S.D. 195,

132 N.W.2d 840; *State v. Harrison,* 1968, 83 S.D. 440, 160 N.W.2d 415. Defendant cannot take advantage of error or misconduct which he has invited. *State v. Whitman,* 1927, 52 S.D. 91, 216 N.W. 858; *State v. Albers,* 1928, 52 S.D. 582, 219 N.W. 263; *State v. Leighton,* 1929, 54 S.D. 417, 223 N.W. 337.

■ It further appears from the settled record that defense counsel suggested in final argument that a certain exhibit, apparently a package of marijuana, was too large to fit in a coat pocket without another person seeing the bag, whereupon the attorney general in rebuttal put his coat on and placed the exhibit in one of the pockets. Defendant complains that this was error since that coat was not the coat which was then worn by the defendant. As a matter of fact, neither coat was in evidence. The following appears from the transcript:

> "MR. JANKLOW: Ladies and gentlemen of the jury, you can see why you are the judges. How do you put that stuff in a coat?
>
> (Thereupon Mr. Janklow proceeded to put a coat on and put one of the exhibits in the pocket)
>
> "MR. GRIDLEY: Your Honor, objection.
>
> "MR. JANKLOW: That is the question, Your Honor. I am going to show them how to put it in a coat.
>
> "THE COURT: Just a minute, let him make the objection.
>
> "MR. GRIDLEY: That coat is not in evidence and that is highly improper.
>
> "MR. JANKLOW: They suggested it couldn't be done without—
>
> "THE COURT: I will sustain the objection, that coat was never put in evidence."

The defendant then made a motion for mistrial, which was denied. The proceedings resumed as follows:

> "THE COURT: Mr. Janklow, you may continue.
>
> "MR. JANKLOW: Can you put it in a coat? Did the defendant bring his coat here and show you, ladies and gentlemen, whether or not he could carry it in his coat?"

The argument did, of course, exceed the evidence. However, here again, counsel for the defendant invited the response by claiming that the testimony of the state was impossible since the bag was too large to fit in a coat.

We have reviewed other claims of error made by the defendant and find no prejudicial error. The judgment is affirmed.

RAMYNKE, Circuit Judge, concurs.

ZASTROW and PORTER and MORGAN, JJ., concur specially.

RAMYNKE, Circuit Judge, sitting for DUNN, C. J., disqualified.

FOSHEIM, Circuit Judge, sitting for WOLLMAN, J., disqualified.

ZASTROW, Justice (concurring specially).

The comments made by the attorney general during the closing argument would have been extremely prejudicial had the defendant not called witnesses or taken the stand himself. However, I find those statements something less than a comment upon the defendant's privilege against self-incrimination where he has taken the stand and admitted the crime but interposed a defense of entrapment.

The comments regarding the use of the subpoena power implied that the defendant must prove entrapment, rather than the state proving that there was not. The trial court in addition to stating that both parties had the power of subpoena should have also reiterated the burden of proof instructions. However, the defense counsel did not request such further comment by the court.

With these qualifications, I find the comments not to have been prejudicial error. However, this decision should not be considered to be an approval of the trial tactics or closing argument of the attorney general.

PORTER, Justice (concurring specially).

I concur in the opinion, with the following exception.

A pre-trial psychiatric examination of a witness in *any* case should be ordered by the trial court only upon a strong showing of need and justification. *See generally*, Note, Psychiatric Examinations of Witnesses: Standards, Timing and Use by Indigents, 55 Iowa L.Rev. 1286, 1298–1300 (1970). The trial court here did not abuse its discretion in denying defendant's motion. I concur in that portion of the opinion on appeal solely on the above grounds.

MORGAN, Justice (concurring specially).

I concur with the result for all of the reasons stated in the majority opinion; however, I read the portion thereof extending the *Klueber* decision to drug cases to encompass only a narrowly defined area where the state relies solely on the uncorroborated testimony of a narcotics user turned agent whether for pay or for special consideration in the handling of his own case.