In the Matter of Randy Ray PETERSON.

No. C1–84–1263.

Court of Appeals of Minnesota.

Oct. 23, 1984.

Nancy K. Olkon, Minneapolis, for Peterson.

Thomas Johnson, Hennepin County Atty., John R. Owen, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Peterson appeals a June 14, 1984 order for commitment. We affirm as modified.

## FACTS

Peterson is a 28-year-old man with a history of mental illness. Since January 1984, he has lived with his mother, who testified he had not been taking prescribed anti-psychotic drugs. In May and June of 1984, his behavior became erratic. He was often agitated and easily bothered, was unable to carry on a conversation, was frequently annoyed by the occurrence of change in the neighborhood, did not recognize his mother and called her "some German." He repeatedly moved basement furnishings around and began picking at his skin, leaving marks all over his body. On June 1, 1984, he removed a hammer from the garage, walked towards Lyndale Avenue, pounded several times on a telephone or electrical pole, and continued walking. After police officers spoke with him, he re-turned the hammer to the garage. Later that same day, Peterson took a hatchet from the garage, hit the door frame twice, then began walking towards Lyndale Avenue again. He hit the pole several times, returned to the garage, where he hit the concrete apron, then went into the garage. The police then arrived.

Two days later, Peterson was observed at Richfield Lake. Despite an outdoor temperature of 90 degrees, he wore a heavy leather jacket. Betty Pettit testified she was sitting near the water with her dog when she realized Peterson was staring at her. His eyes looked strange and glazed over. Pettit ran past him and began walking away when she reached the sidewalk. When Pettit stopped walking, so did Peterson. When she began walking again, he also did. Peterson walked faster to match Pettit's speed. Pettit began running and Peterson ducked between two buildings, then came very close to Pettit. Alerted by Pettit's screams, four bystanders intervened. One of them, Paul Green, continued to observe Peterson as he returned to the lake area. Peterson began watching an older man walking a dog and spun around, just as he had before he began following Pettit. The police then arrived and Peterson was transported to Hennepin County Medical Center, where he was admitted.

On June 11, 1984, Dr. Wallace Balcerzak, a licensed consulting psychologist appointed by the court, examined appellant. Balcerzak noted Peterson's suspicious attitude. Peterson was deluded as to his own identity, and thought he was Danny Paul Mitchell "because when [he] was young someone kicked [him] in the balls." Balcerzak concluded appellant was actively psychotic and diagnosed his mental illness as paranoid schizophrenia. The trial court concurred and ordered commitment to Anoka State Hospital.

## ISSUE

Whether the trial court properly found Peterson mentally ill?

## ANALYSIS

If a court finds, by clear and convincing evidence, that the proposed patient is mentally ill and that there is no suitable alternative to judicial commitment, the court must commit the patient to the least restrictive treatment facility appropriate to the patient's needs. Minn.Stat. § 253B.09, subd. 1 (1982). "Mentally ill person" is defined as:

* * * any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which (a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and (b) poses a substantial likelihood of physical harm to himself or others as demonstrated by (i) a recent attempt or threat to physically harm himself or others, or (ii) a failure to provide necessary food, clothing, shelter or medical care for himself, as a result of the impairment. * * *

Minn.Stat. § 253B.02, subd. 13 (Supp.1983).

Although appellant does not dispute the appropriateness of Anoka State Hospital as the treatment facility, he argues there is insufficient evidence to support the trial court's finding of mental illness.

■ Our review of commitment proceedings is limited to an examination of compliance with the Minnesota Commitment Act, including the making of required findings of fact and conclusions of law, and an evaluation of less restrictive alternatives considered and rejected. Minn.Stat. § 253B.09, subd. 2 (1982). The commitment order must be "justified by findings based upon evidence at the hearing." Minn.R.Civ. Commitment 11.01. The factual findings may not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01.

■ The court's findings that appellant suffered from a substantial psychiatric disorder of thought, mood, and perception, namely paranoid schizophrenia, which grossly impaired his judgment, behavior and ability to recognize reality is amply supported by the examiner's report, and the testimony of both Balcerzak and appellant's mother. The evidence was undisputed that appellant's mental illness grossly impaired his judgment, behavior and ability to recognize reality. He followed a stranger and shook his fist at her, wore a heavy jacket despite extremely warm weather, walked through a residential neighborhood carrying a hammer and later a hatchet, and was deluded as to his own and his mother's identity.

On the basis of medical records introduced and the testimony, the trial court found that Peterson had recently attempted to harm himself and others. The statute requires a finding of threatened or attempted harm to the patient *or* others. Peterson picked at his own skin until he left visible marks all over his body, shook his fist at and chased a stranger, and hit a nurse. There was ample evidence of recent attempts or threats of physical harm, both to Peterson *and* to others.

Appellant notes that the findings of the trial court incorrectly state that appellant chased a woman (Pettit) with a hammer. While it is undisputed that Peterson chased Pettit, the transcript and exhibits yield no evidence that he had a hammer at the time. To that extent, the trial court's finding is erroneous. However, the other findings and the record amply support the trial court's conclusion that Peterson was mentally ill.

## DECISION

The trial court's finding that Peterson chased a woman with a hammer is erroneous. The trial court's conclusion that Peterson was mentally ill and in need of commitment to Anoka State Hospital is supported by the record.

Affirmed.