**In the Matter of Milton S. ALLEN.**

**No. C1–89–1864.**

Court of Appeals of Minnesota.

Feb. 6, 1990.

Gayle M. Lovejoy, Coleraine, for appellant Allen.

Hugh A. Cameron, Itasca County Atty., Winton James Mason, Asst. County Atty., Grand Rapids, for respondent.

Considered and decided by WOZNIAK, C.J., and FORSBERG and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant Milton S. Allen challenges the determination that he is mentally ill and in need of commitment to the Moose Lake Regional Treatment Center. Allen also claims the committing court erred by failing to direct entry of judgment on its order. We affirm.

## FACTS

On September 8, 1989, an Itasca County social worker signed a petition alleging that appellant Milton Allen was mentally ill and in need of commitment. A hearing on the petition was conducted on September 18, 1989.

The evidence indicated that in June 1989, Allen's mother and father helped Allen locate an apartment for himself. Allen was able to provide for his own needs, with some assistance from his mother.

After he moved, Allen stopped taking his medications for mental illness, and began talking about UFO's, aurora lights, and the zodiac. He believed that federal agents were checking up on him and entered his apartment while he was gone. He believed the agents had planted bugs in his ear several years ago when he had surgery.

Allen's mother testified that Allen told her if he had to take his medication or be confined, he would "end it all." She did not characterize him as dangerous, however. Allen's father also believed Allen was not dangerous, but testified that Allen had threatened to "do away" with himself if he were sent to the Moose Lake Regional Treatment Center.

Dr. Lloyd Bransford testified that Allen suffered from paranoid schizophrenia, a substantial psychiatric disorder of thought, mood, perception, orientation or memory, which grossly impaired his ability to recognize reality or to reason or understand. Although Allen claimed his delusions were the result of propane gas leaks, and not mental illness, Dr. Bransford believed otherwise.

Dr. Bransford testified that Allen's disorder has manifested itself by grossly disturbed behavior or faulty perceptions. He based this opinion on the examples of behavior provided by Allen's parents.

Dr. Bransford also believed Allen was dangerous, explaining that paranoid schizophrenics often tend to put themselves in very dangerous situations with the passage of time. Dr. Bransford believed Allen showed a "strong potential for dangerousness." Dr. Bransford testified that Allen had been assigned a community worker, whom Allen believed had special powers that could harm him. Allen believed a crucifix given to him by the worker had burned a hole into his bed.

Dr. Bransford also testified that at one point while Allen was hospitalized awaiting the hearing, he became upset and agitated, stating that he possessed a laser power in his brain, and that if he had to activate that power, everyone would regret it.

Dr. Bransford testified that Allen wanted to take apricot pits instead of his prescribed medication for his mental illness. Allen constantly challenged his prescription dosages, requesting less than Dr. Bransford suggested. Allen himself testified that he did not like taking the medicine.

Dr. Bransford recommended hospitalization for at least 60 to 90 days under supervised medication at Moose Lake. He indicated that Moose Lake was the only alternative he would recommend, since Allen had been uncooperative and had re-

fused to go to Moose Lake or Esther House, a halfway house, and would only agree to go to jail. However, on cross-examination, Dr. Bransford indicated that commitment to Esther House would be ideal, if it were legally possible. Dr. Bransford did not believe voluntary outpatient treatment would be successful, since it had been attempted and had failed in the past. Dr. Bransford also did not believe dismissal of the petition would be appropriate.

Allen himself testified that he wanted to go back to his apartment but, given the choice between Esther House and Moose Lake, he was uncertain which he would prefer. He testified that he believed he was ill because of a gas leak in his apartment, rather than schizophrenia. He stated that the man who had delivered a new gas tank had told him to "watch out," and Allen wondered whether that meant the man was trying to kill him.

Following the hearing, the court found that Allen was mentally ill and committed him for six months to the Moose Lake Regional Treatment Center. Allen has appealed from the court's commitment order.

## ISSUES

1. Did the committing court err by failing to direct entry of judgment on its commitment order?

2. Did the court err by finding that Allen was mentally ill?

3. Did the evidence establish that Moose Lake was the least restrictive placement alternative available to meet Allen's treatment needs?

## ANALYSIS

### I.

■ Minn.Stat. § 253B.09, subd. 2 (1988) requires a committing court to " * * * direct the entry of an appropriate judgment." As Allen argues, the court violated this statutory directive by issuing a commitment order without directing entry of judgment.

A party may appeal from any commitment order "as in other civil cases." Minn. Stat. § 253B.23, subd. 7 (1988). Other civil cases require appeal from a judgment where necessary, rather than from an order which is not final. *See, e.g., LeRoy v. Figure Skating Club of Minneapolis,* 281 Minn. 576, 572, 162 N.W.2d 248, 249 (1968).

Although the committing court should have directed entry of judgment, were we to remand for entry of judgment, Allen's appeal would merely be delayed. Therefore, in the interest of economy, we consider the merits of Allen's appeal.

### II.

■ Minn.Stat. § 253B.02, subd. 13 (1988) defines a "mentally ill person" as any person who has * * * a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which

(a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and

(b) poses a substantial likelihood of physical harm to self or others as demonstrated by:

(i) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment, or

(ii) a recent attempt or threat to physically harm self or others.

The record must establish by clear and convincing evidence that the proposed patient is mentally ill and in need of commitment. Minn.Stat. § 253B.09, subd. 1 (1988). On appeal, we will determine whether the committing court complied with the commitment act and made the required findings, conclusions, and evaluation of less restrictive alternatives. *See In re Peterson,* 356 N.W.2d 746, 748 (Minn.Ct. App.1984). The committing court's order must be justified by findings based on the evidence, and we will not reverse unless the committing court's order is clearly erroneous. *Id.*

■ Allen argues there is insufficient evidence that his disorder is manifested by

instances of grossly disturbed behavior or faulty perceptions, or that he poses a substantial likelihood of harm to himself or others. The record, however, proves otherwise.

Allen also argues the court's findings are insufficient to satisfy the statutory requirement that the court "find the facts specifically." Minn.Stat. § 253B.09, subd. 2 (1988).

Regarding grossly disturbed behavior or faulty perceptions, the committing court made findings that Allen hallucinates, particularly about being overcome by gas, that he is concerned that the worker who installed the new gas tank threatened him, and that in other instances he has an inordinate fear that harm may come to him. Concerning the likelihood of harm element, the court made findings regarding Allen's failure to take his medications and his threatening behavior while hospitalized. These findings are sufficiently specific to satisfy the statutory requirement.

### III.

Minn.Stat. § 253B.09, subd. 1 requires that Allen be committed to the "least restrictive treatment program which can meet [his] treatment needs * * *." The court found:

> 4. The court finds that after considering the less confining alternatives, to-wit: Esther House and local case management, that the respondent is in need of a hospital setting. That he will not comply with medication schedules. That his fears caused by his mental illness will not allow him to fully cooperate until such time as he has had a longer course of medication management in a structured setting.

Allen argues the court erred by ordering him committed to Moose Lake instead of Esther House, a halfway house. As the respondent notes, however, there is evidence that Allen would not cooperate with commitment at either Moose Lake or Esther House, and has threatened to take his life if confined.

### DECISION

The court properly committed Allen as mentally ill to the Moose Lake Regional Treatment Center.

Affirmed.