**In the Matter of Antonio
Ricardo GONZALEZ.**

No. C5–90–352.

Court of Appeals of Minnesota.

June 5, 1990.

Dwight J. Leatham, Leatham & Hale, P.A., Minneapolis, for appellant Gonzalez.

Thomas L. Johnson, Hennepin County Atty., John R. Owen, Asst. County Atty., Minneapolis, for respondent petitioner.

Hubert H. Humphrey, III, Atty. Gen., Kathy Meade Hebert, Sp. Asst. Atty. Gen., St. Paul, for respondent Dept. of Human Services.

Considered and decided by FOLEY, P.J., and HUSPENI and LESLIE,* JJ.

## OPINION

FOLEY, Judge.

A petition to commit appellant Antonio Ricardo Gonzalez as mentally ill was filed. The trial court, after a hearing, committed appellant as mentally ill to the Anoka–Metro Regional Treatment Center. Gonzalez appeals.

## FACTS

Appellant was discharged from the Hennepin County Medical Center. Randy Swanson, a senior psychiatric social worker with the Hennepin County Mental Health Center, met with appellant for an intake assessment and medication follow-up on October 25 and November 15 and 16, 1989. On the November 15, Swanson observed appellant exhibiting pressured speech, flightive ideas, grandiosity, sense of entitlement, and some psychomotor agitation. At one point, appellant made a threatening gesture as if to take Swanson's framed degrees off the wall, although he did not do so. Appellant described himself as a professional philosopher and as the victim of organized harassment by legal and mental health professionals to deprive him of his freedom. Swanson talked with appellant briefly on November 16, and observed the same behaviors as he had seen the day before. Swanson felt appellant was in a manic episode, and his medications, if he was taking them, were not helping. Swanson alerted the crisis center, and the police

escorted appellant to the Crisis Intervention Center.

Appellant was then transferred to the Metropolitan Mount Sinai Center. He was diagnosed as paranoid schizophrenic, assaultive. On November 17, appellant ran nude into the unit lounge of the hospital. On November 20, he said he lived in a suburban area and was in the insurance business, neither of which was true. The nursing notes indicate appellant was disruptive, intrusive and argumentative, and frequently refused medication. Appellant has no permanent address and currently resides at the Metropolitan Medical Center.

Appellant's brother-in-law's wife has known appellant about 10 years, and to the best of her knowledge, he has never had a job. Appellant has left many messages on their telephone answering machine. In mid-September she found three messages from appellant, as well as a fourth from another person. She removed the tape from the answering machine and placed it in a cabinet in her dining room, where it remained until she learned this proceeding was pending. The cabinet was unlocked, and any number of family members had been in the dining room. The brother-in-law's wife then took the tape, transcribed it, and left it in her purse until she gave it to counsel the day of the hearing. When she listened to the tape the week before the hearing, it sounded identical to the way it sounded when she first heard it, and no additional messages were put on it.

Appellant made extensive objections to the tape and the transcript, which contained additional comments not on the tape. The trial court did not admit the transcript into evidence. The court deemed the tape reliable and admitted it for purposes of showing threats by appellant. The trial court found appellant called in mid-September

leaving threatening messages on the telephone answering machine indicating [his brother-in-law and his wife] have damaged his reputation, he has dispossessed [his brother-in-law's wife] of her baptism, confirmation and first communion, Satan is nicer than his brother, his parents are alive in heaven, no one nicer than Satan is alive, "Remember me. I am unmerciful.", [S.S.] would die, he is "Shah [S.], the only one all over the world 'cuz I'm Irish. Please, Tony Gonzalez, everything is mine or else I take it out with Sergeant Shamblin, killing everyone. Kill the lawyers with weapons."

The court-appointed examiner, Dr. Caryl Boehnert, testified she believes appellant suffers from bi-polar disorder, which is an affective disorder, and he is currently in the manic phase. He suffers from a psychiatric disorder of thought, mood and perception, which impairs his judgment, behavior, and capacity to recognize reality and to reason or understand.

Boehnert testified appellant's behavior in court is one example of appellant's tangential rambling. He referred to a nurse he had known many years ago who looked like the social worker. He told Boehnert that he could tell someone wanted to steal his t-shirt by the way he threw his coat on the coat rack. He said he controlled the Timberwolves and denied harming his wife, whom he has assaulted in the past.

Boehnert testified she believed appellant could provide shelter, food and clothing for himself, because he can get around the system and stay at shelters and obtain vouchers. She did not believe he would get psychiatric care or take Thorazine voluntarily, because he does not believe he is mentally ill.

Appellant refuses to apply for benefits, and if released he would go back to the shelters. Boehnert testified he could pose a danger of physical harm to himself or others because his manic intrusiveness could easily negatively affect people around him and he could inadvertently turn into a target for somebody who does not like his intrusions or grandiosity. She considers shelters more dangerous than the average community for this reason.

The trial court committed appellant as mentally ill to the Anoka–Metro Regional Treatment Center. Gonzalez appeals. The Department of Human Services filed a notice of review, which was subsequently dis-

missed pursuant to a stipulation by the parties.

## ISSUES

1. May this court consider evidentiary issues which appellant did not raise in a motion for a new trial?

2. Did the trial court abuse its discretion in determining there was sufficient foundation to admit the tape recording into evidence?

3. Were the trial court's findings of fact as to the statements on the tape clearly erroneous, and, if so, was the error harmless?

4. Was the trial court's determination that appellant is mentally ill justified?

## ANALYSIS

1. Appellant brought an appeal from the judgment of the trial court committing him as mentally ill, but did not make a motion for a new trial. Besides challenging his commitment, he also raises evidentiary issues. Generally, to preserve issues, including evidentiary rulings, arising during the course of a trial, counsel must make timely objections and move for a new trial. *Sauter v. Wasemiller*, 389 N.W.2d 200, 202 (Minn.1986). Failure to do so precludes review. *See Becker v. Alloy Hardfacing & Engineering Co.*, 401 N.W.2d 655, 660 (Minn.1987).

The supreme court recently ruled that motions for a new trial in commitment proceedings are authorized, and orders denying a new trial, as well as commitment orders and judgments, are appealable. *In re Jost*, 449 N.W.2d 719, 721 (Minn.1990). The supreme court noted that the scope of review on appeal from denial of a new trial differs from that afforded on appeal from the underlying commitment decision. *Id.; see Schiltz v. City of Duluth*, 449 N.W.2d 439, 441 (Minn.1990).

Although the supreme court held that an order denying a new trial is appealable, it did not address the issue of whether a party must make a motion for a new trial in order to preserve issues arising during trial for appeal. *See Sauter*, 389 N.W.2d

at 202. We address that issue here, and hold a motion is not a prerequisite to appeal. In an ordinary civil case, the scope of review on an appeal from a judgment without a motion for a new trial is whether the evidence supports the findings and whether the findings support the conclusions of law and judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). By contrast, appellate review of commitment proceedings focuses on compliance with Minn.Stat. § 253B.09, subd. 2 (1988), which requires making findings of fact, and conclusions of law, and consideration of less restrictive alternatives. *In re Peterson*, 356 N.W.2d 746, 748 (Minn.App. 1984).

Requiring a motion for a new trial to preserve evidentiary issues for appeal would prolong a proceeding which the legislature meant to expedite. *See* Minn.Stat. § 253B.23, subd. 7 (1988). By allowing parties to raise evidentiary issues on appeal from the commitment judgment or order without requiring that all such appeals be taken from a post-trial order, we lend finality to the proceeding and allow speedier review.

We also note that a motion for a new trial is unnecessary in a criminal proceeding to preserve issues for appellate review. Minn.R.Crim.P. 28.02, subd. 11. The special nature of commitment and criminal proceedings, coupled with the deprivation of liberty, compels a broader scope of review encompassing review of evidentiary issues on appeal from the order or judgment on the merits. *See In re Cordie*, 372 N.W.2d 24, 28 (Minn.App.1985), *pet. for rev. denied* (Minn. Sept. 26, 1985). Therefore, we will review evidentiary rulings raised in this appeal from the judgment of commitment.

2. Appellant challenges the trial court's decision to admit the telephone answering tape. Appellant argues that his brother-in-law's wife did not show a chain of undisturbed possession and speculates that family members had access to the tape, apparently contending they may have tampered with the tape.

His brother-in-law's wife, who has known appellant for approximately 10 years, testified it was his voice on the tape. This testimony provided a basis for the trial court to conclude the tape was what its proponent claimed, a message from appellant. Minn.R.Evid. 901(a), (b)(5); *State v. Hager*, 325 N.W.2d 43, 44–45 (Minn.1982). Further, the tape containing three messages from appellant, as well as a fourth message from another person after appellant's messages, is a unique object, which his brother-in-law's wife identified on the basis of her personal knowledge. *Id.* at 44.

Appellant also contends there is no showing the device worked properly or that the witness was a competent operator. It is evident that the device worked properly and that the tape was not accidentally harmed, because the answering machine recorded three messages from appellant, and his brother-in-law's wife testified that the messages were the same as when she first listened to it.

Finally, appellant contends the clarity and correctness of the tape "seem most uncertain." When a tape is partially inaudible or a portion of a statement or conversation is not recorded, courts have applied the broad general rule that the recording is admissible unless the inaudible or omitted portions are so substantial the recording as a whole is rendered untrustworthy. Annot., *Admissibility of Inaudible Sound Recording*, 57 A.L.R.3d 746, 749 (1974); *see State v. Raasch*, 201 Minn. 158, 161, 275 N.W. 620, 621 (1937). Such admission is largely within the court's discretion. 57 A.L.R.3d at 749. The trial court did not abuse its discretion in admitting the tape into evidence.

■ 3. Next, appellant contends the trial court was clearly erroneous in the findings which it made as to the tape, and that this court should make a de novo review. We note the proper standard of review is as follows:

Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01 (Supp.1989).

Appellant argues that specific portions of the trial court's findings were clearly erroneous. The trial court found he said "unmerciful"; instead, he argues he said "merciful." The trial court found he said "[S.S.] would die"; instead, he argues he said "[P.S.] had my very strong heart, only he die." Finally, the trial court transcribed: "Kill the lawyers with weapons"; he asserts he said "[h]ere are the lawyers with weapons."

Respondent points out that at the close of the hearing before the trial court even had the opportunity to listen to the tape, it found appellant to be mentally ill based on evidence apart from the tape. Therefore, respondent asserts any findings as to the tape, whether correct or erroneous, have no bearing on the final determination.

The written findings summarize only a portion of the messages. We agree with the trial court that the messages are somewhat threatening, even if the challenged portions could be interpreted as appellant asserts. Therefore, the error, if any, is harmless. *See Furley Sales v. North American Automotive*, 325 N.W.2d 20, 27–28 (Minn.1982).

Finally, we note that appellant concedes that if the trial court had the transcript in hand, error might have been avoided. However, appellant's counsel below argued vigorously and successfully that the transcript should not be introduced into evidence.

■ 4. Appellant asserts simply that if the disputed facts from the tape are not considered, the determination that appellant is mentally ill should be reversed. He contends that appellant's case is borderline, and the answering machine tape prejudiced the case against him.

A mentally ill person is defined as:

[A]ny person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to rec-

ognize reality, or to reason or understand, which

(a) is manifested by instances of grossly disturbed behavior or faulty perception; and

(b) poses a substantial likelihood of physical harm to self or others as demonstrated by:

(i) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment, or

(ii) a recent attempt or threat to physically harm self or others.

Minn.Stat. § 253B.02, subd. 13 (1988). A trial court must find a person mentally ill by clear and convincing evidence. *Id.*, § 253B.09, subd. 1; *In re Leebl*, 352 N.W.2d 135, 137 (Minn.App.1984).

▮ Upon review, this court is limited to an examination of whether the trial court complied with the requirements of the statute. *In re Fusa*, 355 N.W.2d 456, 457 (Minn.App.1984). The commitment must be "justified by findings based upon evidence at the hearing." Minn.R.Civ.Commitment 11.01. The findings

shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01; *Fusa*, 355 N.W.2d at 457. The "determination of mental illness is a mixed question of legal and medical judgment." *In re Moll*, 347 N.W.2d 67, 70 (Minn.App.1984).

Appellant apparently argues that the finding of a "substantial likelihood of physical harm to self or others" was based primarily on the tape. Minn.Stat. § 253B.02, subd. 13(b). Failure to provide necessary food, clothing or shelter also can provide a showing of harm to self. Minn. Stat. § 253B.02, subd. 13(b); *In re DeMatthew*, 349 N.W.2d 855–56 (Minn.App.1984) (failure to provide necessities for self).

While, the trial court recognized the threatening nature of the tape, it also found:

The [appellant] refuses to apply for Medical Assistance and poses a likelihood of harm to himself by his conduct which may outrage others and result in attack on him. The [appellant] cannot provide for his own shelter.

There was clear and convincing evidence, based on the record as a whole, supporting commitment of appellant as a mentally ill person.

DECISION

Affirmed.

