**In the Matter of the GUARDIANSHIP OF Terese WELCH, Ward.**

No. A03–1871.

Court of Appeals of Minnesota.

Sept. 7, 2004.

Mary Ferris Jensen, Minneapolis, MN, for appellant Krasowski and guardians.

Gregory R. Solum, Edina, MN, for respondent Welch.

Considered and decided by
ANDERSON, Presiding Judge;
PETERSON, Judge; and PARKER, Judge.

## OPINION

PARKER, Judge.*

Respondent, who is subject to a private guardianship, suffers from mental illness. Although her condition can be treated with neuroleptic medication, she refuses such treatment unless she is subject to a court order. Appellants sought to extend the private guardian's existing medical consent powers to include consent to the administration of neuroleptic medication, by force if necessary, once respondent is no longer civilly committed. The district court denied the petition, finding no legal authority to support it. Because Minn.Stat. § 524.5–313(c)(4)(i) (Supp.2003) does not include neuroleptic medications among the exceptions to necessary medical treatment that require prior judicial approval, we find that prior court approval is not required for such consent. But because constitutional rights are implicated here, we remand for application of the *Price* and *Mathews* factors to ensure that respondent's privacy and due process rights are adequately protected.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## FACTS

Respondent Terese Welch is diagnosed with mental illness, which grossly impairs her judgment, behavior, capacity to recognize reality, capacity to reason, and capacity to understand. Welch was committed to Hennepin County Medical Center as mentally ill by order of the district court dated March 21, 2003. The court authorized administration of neuroleptic medication for the duration of the order for commitment. Welch's brothers acted as her guardians until September 9, 2003, when the district court appointed appellant Jean Sulzle as Welch's private guardian.

Appellant Phillip Krasowski, Welch's psychiatric nurse, petitioned for modification of the guardianship to include the authority to give informed consent to the use of neuroleptic medication and to consent to the forcible administration of neuroleptic medication if it is reasonable and necessary to do so to treat Welch's mental illness.

This matter came before Hennepin County District Court on May 8, 2003, one day before Welch was released to a transitional group home. Krasowski testified that Welch had a history of compliance with medication while committed, but that she did not take the medication upon release. This ultimately resulted in a return of symptoms, crisis, and rehospitalization. He testified that while on medication, Welch could easily manage her symptoms. The record shows, however, that Welch believes the medication is illegal and will only take it when she has a court order to do so.

The district court denied the petition for modification, holding that the case law and

Minn. Const. art. VI, § 10.

statutes do not apply to private conservatorships without civil commitment, and thus the district court had no legal authority to grant the requested relief.

## ISSUE

What process is required for a private guardian to consent to forcible administration of neuroleptic medication for a legally incapacitated individual who is not under civil commitment?

## ANALYSIS

■ Appellants argue that the district court has the legal authority to grant their request to modify the guardianship. This issue involves the interpretation of statutes and caselaw, which are purely legal questions. *Martin ex rel. Hoff v. City of Rochester,* 642 N.W.2d 1, 9 (2002). Thus, this court need not give deference to the district courts determinations. *Frost–Benco Elec. Assn v. Minn. Pub. Utils. Commn,* 358 N.W.2d 639, 642 (Minn.1984).

■ Under Minn.Stat. § 524.5–313(c)(4)(i), guardians have the authority to consent to the administration of necessary medical procedures on behalf of incapacitated wards:

The duties and powers of a guardian or those which the court may grant to a guardian include, but are not limited to:

. . . .

[T]he power to give any necessary consent to enable the ward to receive necessary medical or other professional care, counsel, treatment, or service, *except that no guardian may give consent for psychosurgery, electroshock, sterilization, or experimental treatment of any kind unless the procedure is first approved by order of the court* as provided in this clause. The guardian shall not consent to any medical care for the ward which violates the known conscientious, religious, or moral belief of the ward.

*Id.* (emphasis added). "Exceptions expressed in a law shall be construed to exclude all others." Minn.Stat. 645.19 (2002). Because neuroleptic medications are not among the exceptions expressed in the statute, we construe the statute to include neuroleptic medications among the necessary medical care for which a guardian may give consent.

Respondent argues, however, that extending a guardian's statutory rights to include consent to administer neuroleptic medications adversely affects her constitutional rights as guaranteed by the federal and Minnesota Constitutions. In *Jarvis v. Levine,* the Minnesota Supreme Court held that under the Minnesota Constitution, the administration of neuroleptic medication is an intrusive form of treatment that affects an individual's right to privacy. 418 N.W.2d 139, 148 (Minn.1988). The *Jarvis* court further held that the three-part *Price* procedure applies to ensure that the right to privacy is protected. *Id.* at 144. The *Price* procedure is as follows:

(1) If the patient is incompetent to give consent or refuses consent or his guardian other than persons responsible for his commitment also refuses his consent, before more intrusive forms of treatment may be utilized, the medical director of the state hospital must petition the probate division of the county court in the county in which the hospital is located for an order authorizing the prescribed treatment; (2) the court shall appoint a guardian ad litem to represent the interests of the patient; (3) in an adversary proceeding, pursuant to the petition, the court shall determine the necessity and reasonableness of the prescribed treatment.

*Price v. Sheppard* 307 Minn. 250, 262, 239 N.W.2d 905, 913 (1976).

In *In re Conservatorship of Foster*, the Minnesota Supreme Court adopted the three-part *Mathews* test to ensure that an intrusive medical procedure did not deprive a mentally ill person of the right to due process:

> Under this test, we determine whether the process adequately balances: (1) the private interest affected by the governments action; (2) the risk that the process provided will result in an erroneous deprivation of the private interest and the probable value of additional or substitute procedural safeguards; and (3) the states interest in the procedures provided, including the administrative burden and expense the additional procedures sought would require.

547 N.W.2d 81, 85 (Minn.1996).

The district court distinguished *Jarvis* because that case involved the process by which neuroleptic medication should be administered to individuals subject to civil commitment and this case involves the administration of medication once Welchs civil commitment period expires. The district court also distinguished *Foster*, reasoning that Foster voluntarily took neuroleptic medication and it is undisputed that here Welch opposes taking the neuroleptic medication. In addition, the district court, citing Minn.Stat. 252A, 253B.092, noted that the statutes specifically set forth procedures for civilly committed individuals and individuals with *public* guardians and that those authorities do not apply here.

 We agree that those statutes do not apply here. As we stated earlier, however, Minn.Stat. § 524.5–313(c)(4)(i), which does not distinguish between public and private guardianships, does not include neuroleptic medications among the exceptions to necessary medical treatment that require prior judicial approval. Thus, while the caselaw the district court cited is factually distinguishable from the case at bar, they share a common legal issue. The common legal issue, when an incapacitated individual asserts that her constitutional rights will be adversely affected by the guardians consent to the administration of an intrusive medical procedure, is whether the consent actually does so. We hold that in such cases, regardless of whether the individual is subject to a private or public guardianship and regardless of civil commitment status, the constitutional analysis must be applied to ensure protection of an individuals right to privacy and due process.

## DECISION

The current record is insufficient for proper analysis of whether Welchs constitutional rights are adversely affected here. Thus, we reverse and vacate the district courts order denying the petition for modification of a conservatorship and remand to the district court for application of the *Price* procedure and *Mathews* test.

**Reversed and remanded.**